1  BENJAMIN LAW GROUP, P.C.
   NA'IL BENJAMIN, ESQ. (SBN 240354)
2  ALLYSSA VILLANUEVA (SBN 312935)
   1290 B STREET, SUITE 314
3  HAYWARD, CA 94541
   Telephone: (510) 897-9967
4  Facsimile:  (510) 439-2632
   nbenjmin@benjaminlawgroup.com
5  allyssa@benjaminlawgroup.com

6  Attorneys for Plaintiffs
   WILLIAM USCHOLD and
7  TYRONE DANGERFIELD
   On behalf of themselves and others similarly situated

8

9                    **UNITED STATES DISTRICT COURT**

10                  **NORTHERN DISTRICT OF CALIFORNIA**

11

12                                          Case No. 3:18-cv-01039-JSC

13  WILLIAM USCHOLD and TYRONE
    DANGERFIELD, each individually and on
14  behalf of others similarly situated,       **NOTICE OF MOTION; AMENDED
                                                MOTION FOR PRELIMINARY
15                      Plaintiffs,            APPROVAL OF CLASS ACTION
                                                SETTLEMENT; MEMORANDUM OF
16          v.                                  POINTS AND AUTHORITIES IN
                                                SUPPORT THEREOF**
17
                                                **[Declaration of Allyssa Villanueva;
18                                              Declaration of Na'il Benjamin;
                                                Declaration of JoAnna Brooks; and
19  NORTHSTAR MEMORIAL GROUP, et al.,           Proposed Order filed concurrently
                                                herewith]**
20                      Defendants.

21                                              **Date:**  September 19, 2019
                                                **Time:** 9:00am
22                                              **Courtroom:** F, 15th Floor
                                                **Judge:** Hon. Jacqueline Scott Corley
23

24

25

26          PLEASE TAKE NOTICE that, on Thursday September 19, 2019 at 9:00 a.m., or as soon

27  thereafter as may be heard, in Courtroom F of the San Francisco Courthouse of the U.S. District

28  Court for the Northern District of California, located at 450 Golden Gate Avenue, 15th Floor, San

Francisco, California 94102, Plaintiffs WILLIAM USCHOLD ("Mr. Uschold") and TYRONE

DANGERFIELD ("Mr. Dangerfield")(collectively "Plaintiffs") and Defendants NORTHSTAR

MEMORIAL GROUP; NORTHSTAR MEMORIAL GROUP D/B/A CHAPEL OF THE

CHIMES; CHAPEL OF THE CHINES AND NSMG SHARED SERVICES LLC, D/B/A/

NORTHSTAR MEMORIAL GROUP SHARED SERVICES LLC (collectively "Defendants")

(all together, "the Parties") jointly will and hereby do move this Court for an order:

1. Conditionally certifying the Settlement Class, defined as all non-exempt employees of Defendants employed in California during the Class Period except any employee who has individually adjudicated his/her claims from January 17, 2014 through the date on which the Court grants Preliminary Approval;

2. Preliminarily approving the Settlement Agreement submitted concurrently herewith;

3. Appointing Plaintiffs as the Class Representatives for the Settlement Class;

4. Appointing Na'il Benjamin and Allyssa Villanueva of Benjamin Law Group, P.C. as Class Counsel for the Settlement Class;

5. Approving the form and content of the proposed Class Notice Packet submitted concurrently with this Motion;

6. Approving the Notice procedure set forth in the Settlement Agreement;

7. Approving Simpluris as class claims administrator;

8. Directing that Notice be given to Settlement Class members; and

9. Scheduling a final fairness hearing.

This Motion is made on the grounds that:

a. The Settlement Class meets all of the requirements for class certification for purposes of settlement pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

b. The Settlement Agreement is fair, adequate, and reasonable as required under Rule 23(e) of the Federal Rules of Civil Procedure;

c.  Plaintiff and his counsel are adequate to represent the Settlement Class as required by Rule 23(a)(4) and (g) of the Federal Rules of Civil Procedure;

d.  The notice procedures and related forms comport with all relevant due process requirements and the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure; and

e.  Based on the foregoing, notice should be directed to Settlement Class members and a final fairness hearing should be scheduled.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities included below, on the Declaration of Allyssa Villanueva, Esq. and proposed order filed concurrently herewith, and all accompanying exhibits, all papers currently on file with this Court, and such further evidence and arguments as may be presented at hearing.

Dated:  August 12, 2019                              Respectfully submitted,


BENJAMIN LAW GROUP, PC.


By  _____
        NA'IL BENJAMIN, ESQ.
        Attorney for Plaintiffs
        WILLIAM USCHOLD and
        TYRONE DANGERFIELD

1

## **TABLE OF CONTENTS**

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

II.     SUMMARY OF THE LITIGATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

III.    SUMMARY OF THE SETTLEMENT AGREEMENT. . . . . . . . . . . . . . . . . . . . **4**

   a.   Net Settlement Fund Allocation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

   b.   Calculation of Individual Settlement Payments. . . . . . . . . . . . . . . . . . . . . .**4**

   c.   Dispute Resolution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

   d.   Release of Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

   e.   Notice Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

   f.   Payment Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**7**

   g.   Deduction of Payroll Taxes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

   h.   Attorney's Fees Consistent with Ninth Circuit Precedent. . . . . . . . . . . . . . . . **9**

IV.     LEGAL STANDARDS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**11**

V.      ARGUMENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

   a.   This Court Should Certify the Class for Settlement Purposes Only. . . . . . . . . . . . **13**

     i.   This Case Satisfies All Four Requirements of FRCP Rule 23 (a) . . . . . . . . . . . . . .**13**

       1. Numerosity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

       2. Typicality. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**

       3. Adequacy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**

       4. Community. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**14**

     ii.  This Case Satisfies At Least One Requirement Under FRCP Rule 23 (b). . . . . . . . . **15**

   b.   This Court Should Preliminarily Approve the Settlement Agreement  . . . . . . . . . . .**15**

     i    The Settlement is the Result of Serious, Informed, Non-collusive Negotiations. . . . .**16**

     ii   The Settlement is Fair Considering the Potential Damages Per Class Member,
       and the Value And Risks Relating To Further Litigation. . . . . . . . . . . . . . . . . .**16**

     iii  Sufficient Discovery and Investigation Has Occurred to Assess the
       Fairness of the Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**

     iv   The Settlement Amount and Method of Allocation are Fair. . . . . . . . . . . . . . . . .**20**

     v    Plaintiffs' Enhancement Award is Appropriate . . . . . . . . . . . . . . . . . . . . . . **21**

     vi   The Amounts Allocated to Attorneys' Fees and Costs Should be Approved . . . . . . . **22**

     vii  Both State Officials Will Be Provided With The Opportunity to Review
       And Consult Regarding The Settlement. . . . . . . . . . . . . . . . . . . . . . . . . **23**

viii  Plaintiffs' Counsel Have the Requisite Experience . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**

ix   The Degree of Opposition to the Proposed Settlement . . . . . . . . . . . . . . . . . . . . . . .**23**

c.     This Court Should Approve the Proposed Notice and Related Forms . . . . . . . . . . . . **24**

d.     This Court Should Schedule a Final Fairness Cleaning . . . . . . . . . . . . . . . . . . . . . . .**25**

VI.     CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**25**

1

## <u>TABLE OF AUTHORITIES</u>

2

3  <u>CASES</u>

4  <u>Federal Cases</u>

5  *Amchem Products, Inc., et. al. v. George Windsor, et. al.*, 521 U.S. 591 (1997) . . . . . . . . . . . . .**15**

6  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (C.D. Cal. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**

7  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . .. **13**

8  *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**12**

9  *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . **24**

10  *Glass v. UBS Financial Services, Inc.*, WL 221862 (N.D. Cal. 2007). . . . . . . . . . . . . . . . . . . .**21**

11  *Hanan v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . **14**

12  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1996). . . . . . . . . . . . . . **12**, **13**, **16**, **19**, **20**, **23**

13  *In re Global Crossing Securities and ERISA Litigation* 225 F.R.D. 436 (S.D.N.Y. 2004)  . . . . **21**

14  *In re Heritage Bond Litigation*, WL 1594403 (C.D. Cal. 2005). . . . . . . . . . . . . . . . . . . . . . . . . **22**

15  *In re IKON Office Solutions* 194 F.R.D. 166 (E.D. Pa. 2000)  . . . . . . . . . . . . . . . . . . . . . . . . . **21**

16  *In re Omnivision Tech., Inc.*, 2008 WL 123936 (N.D. Cal. Jan. 9, 2008) . . . . . . . . . . . . . . **20**, **21**

17  *Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

18  *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

19  *National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004). . . . . . . . . **13**, **21**

20  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) . . . . . . . . . . . . . .**13**, **21**

21  *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) . . . . . . . . . . . . . . . .**22**

22  *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) . . . . . . . . . . . . . . **9**

23  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir.2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

24  *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997) . . . . . . . . . . . . **23**

25

26  <u>State Cases</u>

27  *Cartt v. Superior Court*, 50 Cal. App. 3d 960 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **24**

28

**STATUTES**

FRCP 23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**2, 11, 13, 14**

28 U.S.C. § 1715 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**

**OTHER AUTHORITIES**

*Newberg on Class Actions* (4th Ed. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12, 13, 24**

*Manual for Complex Litigation Third* § 30.41 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

1       <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2 **I.**      **INTRODUCTION**

3      Plaintiffs and Class Representatives William Uschold and Tyrone Dangerfield

4 ("Plaintiffs" or "Class Representatives") respectfully request that this Court preliminarily

5 approve a proposed class action and representative action settlement set forth in the

6 Settlement Agreement (hereafter "Agreement") with Defendants NSMG Shared Services,

7 LLC ("NSMG" or "Defendant")(erroneously named in the Complaint as Northstar

8 Memorial Group; Northstar  Memorial Group d/b/a Chapel of the Chimes, Chapel of the

9 Chimes and NSMG Shared Services, LLC d/b/a Northstar Memorial Group Shared

10 Services).  NSMG has agreed to pay a Gross Settlement Amount ("GSA") of Two Million,

11 Two Hundred Thousand Dollars and Zero Cents ($2,200,000.00) to compromise disputed

12 wage and contract claims.

13      The Agreement is non-reversionary and provides more than $5,000.00 to each class

14 member (on average) on a gross basis. This is an excellent result for the class given that the

15 most viable class claims are narrowly defined, the factual and legal issues are complex, and

16 this case was vigorously defended by experienced and skilled defense counsel.

17      As explained in further detail herein, the Agreement represents a fair, adequate, and

18 reasonable compromise of disputed claims.  Defendant presented several defenses to

19 Plaintiffs' claims.  Defendant contends that there was no unlawful deductions or collection

20 of wages and that it paid commissions in a lawful manner.  Defendant contends that it paid

21 wages for all hours worked and all wages due at the time of separation.  Defendant contends

22 that it fulfilled its legal obligations to reimburse necessary and reasonable expenses.  And

23 Defendant contends that Plaintiff's claims are ill-suited for class treatment because

24 Plaintiff's claims are not typical of other employees, and because individualized inquiries

25 would predominate over common questions of law and fact.

26      Although Plaintiffs and their counsel prepared to litigate this case through class

27 certification and, ultimately, to trial, there were risks in going forward with litigation, both

28

1    on the merits and in terms of class certification.  Despite being faced with a formidable

2    defense, Plaintiffs have secured an excellent seven-figure settlement for the class.

3         For the reasons discussed herein, the Agreement warrants this Court's preliminary

4    approval because: (1) the class meets all the requirements for class certification for

5    settlement purposes under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

6    (2) Plaintiffs and proposed Class Counsel will adequately represent the class; (3) the

7    Agreement bears all requisite indicia of fairness, reasonableness, and adequacy as required

8    by Rule 23(e)(2); (4) the proposed notice procedure and related forms comport with all Rule

9    23 and due process requirements; and (5) Plaintiffs' request for attorney fees and costs is

10   reasonable and in line with established authority and precedent in similar cases.  Thus, this

11   Court should grant Plaintiffs' motion in its entirety, direct that notice be given to all class

12   members, and schedule a final approval hearing.

13   **II.      SUMMARY OF THE LITIGATION**

14        This action was originally filed in Alameda County Superior Court on January 17, 2018,

15   alleging five state law claims against five business entities as follows: (1) unlawful collection of

16   wages ; (2) unauthorized deduction of wages; (3) failure to reimburse business expenses; and (4)

17   failure to pay wages; in addition to a fifth claim for violation of the unfair competition law

18   codified in the California Business and Professions Code.  Declaration of Allyssa Villanueva

19   ("Villanueva Declaration") ¶ 2.

20        On February 16, 2018, Defendant NSMG SHARED SERVICES, LLC ("NSMG")

21   removed the action to this Court under the Class Action Fairness Act ("CAFA") asserting that it

22   is the only properly named Defendant.  Notice of Removal [Dkt No. 1]  Plaintiffs filed a Motion

23   to Remand but withdrew that motion after evaluating the bases for removal. [Dkt Nos. 10 and 18].

24        The Parties participated in two mediations with Tripper Ortman, a retired trial lawyer and

25   partner from the international law firm, Seyfarth Shaw.  Villanueva Decl. ¶ 3.  The Parties also

26   conducted discovery in advance of both mediations.  *Id*. The first mediation was on October 24,

27   2018.  *Id*.  The first day of mediation was unsuccessful.  *Id*.  However, the Parties conducted

28   additional discovery, including hours of informal interviews of the named Plaintiffs, a key

defense witness with direct knowledge of the facts relating to Plaintiffs' allegations, as well as non-party witnesses.  Villanueva Decl. ¶ 4.  The parties then spent many months in discussions and negotiations regarding the proposed new plaintiffs, new claims of fraud and failure to pay overtime wages, and the terms of a second mediation.  *Id*. at ¶ 5.  The Parties engaged in extensive informal individual and class discovery for the exclusive purpose of participating in a second mediation with the new claims included.  *Id*. at ¶ 6.

The Parties then scheduled a second day of mediation and attempted to settle the case on February 5, 2019.  Villanueva Decl. ¶ 11.  The Parties continued to engage in discovery including document exchange and witness interviews to assess their positions for mediation.  *Id*. at ¶¶ 7-10. 9.  The documents exchanged in discovery revealed an increased number of  429 putative class members with around 50% classified as outside sales and 50% classified as inside sales and around 81 were classified as both outside and inside sales during their employment in the class period with Defendant.  *Id*. at ¶ 9.  The February 2019  mediation was also unsuccessful and focused mainly on the outside sales exemption issue.  Villanueva Decl. ¶¶ 12 and 14.

Based on the record and assessment, Plaintiff valued the case to be at least $9 Million and Defendant contended there was no exposure.  *Id*. at ¶ 13.  Defendant presented numerous arguments and defenses to class certification and liability.  Plaintiffs learned during informal discovery that the disputed commission structure was not in existence until 2017, and that the company had some written commission agreements, written sales policies and weekly commission statements.  *Id*. at 13(b).  Plaintiffs also learned that Defendant had conducted training on its commission structure within the first six months of its rollout.  *Id*.  The disputed exposure period for Plaintiffs' strongest claims was greatly reduced.  For those who were classified as exempt Outside Salespersons, Defendant maintained that they were all properly classified, and contended that proving otherwise was expected to be an uphill battle.  *Id*. at 13(b).  Defendant also presented evidence of policies prohibiting off the clock work.  In addition, Defendant was able to demonstrate it provided expense reimbursement for travel time and cell phone use for some potential class members, which would have made class certification a significant challenge.  *Id*. at 13(b).

The Parties continued to negotiate after the last Case Management Conference, and ultimately reached an agreement in early March 2019.  Villanueva Decl. ¶ 7.  At all times, the Parties' remained adverse, their negotiations were non-collusive, and at arm's length.  Villanueva Decl. ¶ 17.

Plaintiffs filed a Notice of Settlement on March 8, 2019. [Dkt No. 36]  Plaintiffs now submit the Settlement Agreement to this Court for approval.  Villanueva Decl. ¶ 19, Ex. A.  Plaintiffs will file a stipulation to amend the pleadings attaching a First Amended Complaint that will add Plaintiffs Tiana Naples and Jose Almendarez, as well as new claims of: breach of contract; fraud- intentional misrepresentation; fraud-false promise; failure to pay minimum wages; and a PAGA claim; and facts supporting these amendments.  Agreement ¶ 19; 33, Ex. B.

## III.    SUMMARY OF THE SETTLEMENT AGREEMENT

### a.  Net Settlement Fund Allocation

The Agreement provides for a Gross Settlement Amount of $2,200,000 ("GSA"). Agreement at ¶ 37.  The Net Settlement Amount ("NSA") shall be calculated by deducting from the GSA (i) the LWDA PAGA Payment ($33,000.00); (ii) Class Counsel's attorneys' fees as approved by the Court (up to 1/3 of the GSA or $736,200.00); (iii) costs as approved by the Court (not to exceed $20,000.00); (iv) the Settlement Administrator's costs and fees as approved by the Court; (currently quoted by Simpluris to be between $8,000 and $11,000 as the class action settlement administrator); (v) Defendant's estimated share of applicable payroll taxes to be paid on the individual settlement payments, including but not limited to FICA and FUTA (currently estimated to be approximately $64,633.38); and (vi) the Court approved Service Awards in the amount of $2,000.00 per named Plaintiff.

### b.  Calculation of Individual Settlement Payments

Each class member that does not affirmatively opt out will receive a pro rata share of the NSA based on (a) each Class Member's Total Individual Workweeks; (b) divided by the aggregate number of Total Class Gross Workweeks of all Class Members; (c) multiplied by the value of the Net Settlement Amount.  Each Class Member's Total Individual Workweeks will be determined by reference to the Company's records, subject to each Class Member's right to

submit evidence in support of their respective claims.  Agreement ¶ 42.  The Settling Parties agree that for purposes of settlement that one-third (33.33%) of each Class Member Settlement Payment is allocated to wages.  The remaining portion of each Class Member Settlement Payment shall be allocated one-third (33.33%) to interest, and one-third (33.33%) to penalties.  *Id*. at (d).

All checks to participating class members not cashed within 180 days of mailing will be voided.  Agreement  ¶ 45.  None of the settlement funds shall revert to Defendant.  Agreement ¶ 37.  The Agreement provides more than $5,000.00 to each class member (on average) on a gross basis.  Villanueva Decl. ¶ 20.

### c.  Dispute Resolution

If a Class Member wishes to dispute the information on the Notice, including his or her Total Individual Compensation, the Class Member may so notify the Settlement Administrator and must produce supporting evidence to the Settlement Administrator.  Agreement  ¶ 47.  Any such dispute and accompanying documentation must be submitted in writing no later than sixty (60) calendar days from the date on which Notice is mailed.  *Id*.  NSMG and Class Counsel will review their records and provide information to the Settlement Administrator in response to any such disputed claims.  *Id*.  Defendant's Counsel and Class Counsel will cooperate in attempting to informally agree upon and resolve any such disputes.  *Id*.  The Settlement Administrator will evaluate the evidence submitted by the Class Member and make the decision as to which dates should be applied.  *Id.*

The dispute-resolution procedure will also apply in cases, if any, where a person believes that he or she was mistakenly excluded from the list of Class Members.  Agreement  ¶ 48.

### d.  Release of Claims

Settlement Class members who do not request exclusion shall release NSMG, and each and all of its respective past and present parents, subsidiaries, affiliated companies and corporations, and each and all of their respective past and present owners, directors, officers, managers, employees, general partners, limited partners, principals, agents, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, joint venturers, assigns, or related entities, and each and all of their respective executors, successors,

assigns and legal representatives (collectively, the "Released Parties"), from all claims, charges,

complaints, liens, demands, causes of action, obligations, damages and liabilities, whether known

or unknown, that each Class Member had, now has, or may hereafter claim to have against the

Released Parties, arising at any time during the Class Period that were or could have been pleaded

based on the facts and allegations alleged in the First Amended Complaint filed in the Lawsuit or

arising out of the same nucleus of operative facts.  Agreement  ¶¶ 96-103.

### e.  Notice Procedures

No later than twenty (20) calendar days after the Preliminary Approval Date, Defendant

shall provide the Settlement Administrator an electronic file(s) containing the following

information for each Class Member: (1) full name; (2) last-known address; (3) social security

number (if known); and (4) the gross individual workweeks from January 17, 2014 through the

date of preliminary approval for work done as a commissioned sales employee in the state of

California.  Agreement ¶ 69.  All Notices will be individually calculated to state the precise

amount that the specific Class Member is to receive.  For purposes of this Settlement, a

"workweek" includes any week in which a Class Member worked at least one scheduled shift.  It

does not include weeks of inactive employment.  Agreement ¶ 69.

No later than <u>forty (40) calendar days</u> after Preliminary Approval Date, the Settlement

Administrator shall mail the Notice as approved by the Court, to Class Members, by United States

first class mail, postage prepaid.  Agreement ¶ 71, Ex. A.  The mailing of the Notices described

herein shall be deemed sufficient notice under the law.  Agreement ¶ 72.  In order to provide the

best notice practicable, the Settlement Administrator will run the list of all Class Members

through the United States Postal Service's National Change of Address database ("NCOA")

before mailing the Notice.  Agreement ¶ 73.  If an envelope from the mailing of the Notice is

returned with forwarding addresses, the Settlement Administrator will re-mail the Notice to the

new address within three (3) business days.  Agreement ¶ 74.  In the event that a Notice is

returned to the Settlement Administrator by the United States Postal Service because the address

of the recipient is no longer valid, i.e., the envelope is marked "Return to Sender," the Settlement

Administrator shall perform an appropriate, customary and lawful database search in an effort to

1   ascertain the current address of the particular Class Member in question (a "skip trace") and, if

2   such an address is ascertained, the Settlement Administrator will re-send the Notice within three

3   (3) business days of receiving the newly ascertained address.  Agreement ¶ 75.  A Class Member

4   or Class Counsel may also contact the Settlement Administrator to provide updated address

5   information.  Agreement ¶ 76.

6           If, despite the Settlement Administrator's reasonable efforts, no updated address is

7   obtained, the Notice shall be sent again to the Class Member's last-known address. Agreement ¶

8   77.  The Settlement Administrator shall resend the Notice to any Class Member who contacts the

9   Settlement Administrator or Class Counsel and requests that a Notice be re-sent.  Agreement ¶

10  78.   Any subsequent mailings of a Notice following the original distribution of the Notice as a

11  result of a returned Notice or a Class Member request shall not alter the deadlines to object or

12  opt-out of the Settlement Agreement.  Agreement ¶ 79.

13          **f.   Payment Procedures**

14          No later than <u>ten (10) calendar days</u> of the Effective Date, the Settlement Administrator

15  shall mail all Class Settlement Payments.  The face of each check sent to Class Members shall

16  clearly state that the check must be cashed or deposited within <u>one hundred eighty (180) calendar</u>

17  <u>days</u>.  All Class Settlement Payments distributed by the Settlement Administrator will be

18  accompanied by a cover letter stating words in bold to the effect that "the check must be cashed

19  or deposited within one hundred eighty (180) days or it will become void." Agreement ¶ 44.

20          Like with the Class Notice Process (*see* Section XIII(A) below), if a check is returned

21  undeliverable to the Settlement Administrator, the Settlement Administrator will make all

22  reasonable efforts to locate the Class Member's correct address.  If a Class Member's NSA

23  Payment check is not cashed or deposited within one hundred twenty (120) calendar days

24  following the date of mailing of said check following mailing of said check, the Settlement

25  Administrator will send the Class Member a letter or a postcard informing him or her that unless

26  the check is cashed or deposited within the remaining two months, it will expire and become non-

27  negotiable, and offer to replace the check if it was lost or misplaced but not cashed. Agreement ¶

28  45.

1

### g. Deduction of Payroll Taxes

2        Defendant's estimated share of applicable payroll taxes to be paid on the individual

3   settlement payments, including but not limited to FICA and FUTA will be deducted from the

4   GSA.  During the negotiations of the settlement in this matter, the Parties discussed the tax

5   treatment of any settlement and the costs associated with same.  Declaration of JoAnna L. Brooks

6   In Support of Amended Motion for Preliminary approval of Settlement ("Brooks Decl.") ¶ 2.

7   When determining the GSA, Defendant estimated the cost of handling the preparation of the

8   settlement checks, and particularly the payment of the employer's share of payroll taxes that

9   would be owed on the portion of the settlement allocated to the payment of wages. *Id*.  As the

10  parties worked towards a final gross settlement amount, Defendant estimated the costs for the

11  payment of the employer's share of payroll taxes could be as high as $100,000, depending on the

12  net settlement for distribution to the participating class members. *Id*.  The Parties agreed the GSA

13  would cover the employer's share of taxes and would constitute the maximum sum paid by

14  Defendant. *Id*.  Similar to other deductions from the gross settlement amount to cover attorneys'

15  fees/cost, claims administration, service awards, and PAGA payments, Defendant agreed to

16  contribute more to the gross settlement amount with the expectation that the employer taxes

17  would be deducted from the fund.  Brooks Decl. ¶ 3.

18       Based on the breakdown of the settlement, the net settlement fund that the parties intend

19  to distribute to the participating class members is approximately $1.4 Million.  Brooks Decl. ¶ 4.

20  Of the $1.4 Million, a third will be allocated to wages, $466,667, and subject to the payment of

21  payroll taxes.  Based on current tax rates applicable to Defendant's operations in California, the

22  employer's share of federal and state taxes owed on this amount will be approximately

23  $64,633.38, which is less than the $100,000 that Defendant estimated and contributed to the

24  settlement fund to cover the employer's share of payroll taxes. *Id*.  The class will be receiving a

25  benefit of an additional $35,000 due to the negotiated amount of approximately $100,000 being

26  needed to cover these payroll costs.

27       In the class action context, it is not uncommon for the parties to negotiate and include the

28  payment of the employer's share of taxes in the payment of the gross settlement fund.  Brooks

Decl. ¶ 5.  There is the certainty of knowing that all of the funds for payment of the class have been addressed in one sum versus having unexpected additional costs.  *Id*.  If the Parties understand and agree that the gross settlement has been increased to cover this amount, and there is complete transparency in the class notice, there is no detriment to class members by having this amount deducted from the gross fund.  It is no different than having the claims administration fees deducted by agreement of the parties.  Brooks Decl. ¶ 5. Therefore, the Parties believe this is a fair and reasonable approach to the payment of the employer's share of payroll taxes to be paid from the GSA.

### h.  Attorney's Fees Consistent with Ninth Circuit Precedent

The Agreement provides for up to 33 1/3% of the GSA in attorney fees, and for reimbursement of actual litigation costs.  Agreement ¶ 59.  These provisions are fair, adequate, and reasonable, and fall within the range of reasonable fees in the Ninth Circuit. It is well settled that "the primary basis of the fee award remains the percentage method," and 30% is within the established reasonable range for common-fund cases.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir.2002); *see, e.g., Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 491 (E.D. Cal. 2010) ("[t]he typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value").

Courts in Northern District of California evaluate the complexity of the matter, and the overall nature of the work performed by attorneys when deciding the appropriate amount of contingency fees to award.  Here, Plaintiffs' counsel faced the challenge of certifying a class action comprised of employees assigned to work at different job sites, with different managers, and under different compensation systems.  Defendant used a complex and uncommon commission scheme after 2017 that had the appearance of being lawful.  Defendant previously used a commission plan that was consistent with the oft-used "draw" system, but still susceptible to legal challenge.  The interrelationship between these commission plans, coupled with the varying types of sales employees across several locations, presented factual and legal difficulties that are not common to most wage and hour class action lawsuits.

Defendant has dozens of California properties where it employs potential class members that were hired as commission-earning sales employees.  Each of these locations has different managers, and those managers had different practices with respect to scheduling, overtime, and the use of "commission-only" employees.  These locations also had employees that began working for Defendant under its old "draw" system, and continued to work for Defendant under its new PIPP system.  As pled, Defendant's PIPP commission plan includes a Gate which uses points as a quota.  These employees earn commission based on their performance against the Gate/quota.

Plaintiffs' counsel spent dozens of hours studying Defendant's PIPP and Gate system.  Defendant's employees – including Plaintiffs – did not fully understand the PIPP and Gate, how it worked, and how much they were to earn under various scenarios.  Plaintiffs' counsel had to overcome several misunderstandings about the various components of the PIPP and Gate to ensure counsel could sufficiently evaluate the facts and legal issues under the California Labor Code.  These complexities were compounded, in part, because Defendant also employs "commission only" employees that previously worked under a PIPP and Gate system, but had a change in status.  This meant that they had pay stubs that reflected different methodologies relating to their attendance, hourly rate, quotas, the removal of the quotas, and wages relating only to whether they earned an actual commission in a pay period.

At minimum, this case involved three different compensation plans (Draw, PIPP/Gate, and Commission Only), an analysis of whether these categories of employees satisfied the standards for exempt sales professionals with respect to varying outside and inside sales duties, and the need to be clear about the different types of sub classes and the ability to defeat a motion for summary judgment based on the competing facts with respect to the sales duties of each type of employee.

Additionally, given that Defendant utilized the "draw" commission system before 2017, and that some employees hired after 2017 worked on a commission-only plan, Plaintiffs counsel needed to thoroughly assess the ability to certify a class of PIPP/Gate employees with claims

consistent with those pled in the currently pending complaint, and the proposed First Amended

Complaint.  Given that the potential class size is more than 400 employees, and numerous

employees stopped working for Defendant before the PIPP/Gate system was implemented,

Plaintiffs' counsel needed to employ a rigorous analysis regarding the number of potential class

members, number of sub classes, and number of people in each sub class, and which areas of law

applied to some of these categories, but not others.

In sum, unlike the standard wage and hour class action where a large number of

employees fit into the same basic category, this case involved numerous complex and potentially

competing employment issues.  Plaintiffs' counsel needed to analyze misclassification issues

(exempt v. non-exempt) and which sales employees across numerous locations were entitled to

overtime and meal and rest breaks; the calculation of commissions and whether employees were

deprived of all wages paid when applying the complicated Gate points; whether employees from

different locations were actually similarly situated and eligible for inclusion in the proposed class;

and whether employees expressly or tacitly agreed to each commission system regardless of the

date they signed their offer letters.

## IV.   LEGAL STANDARDS

Cases brought as class actions may only be settled, compromised or dismissed with

court approval. Fed. R. Civ. P. 23(e). Approval of a class action settlement involves a two-

step process. First, counsel for the parties submit the proposed terms of settlement, and the

court makes a preliminary fairness evaluation. At this stage, the court examines the terms

for overall fairness, and in so doing balances the following factors:

• The strength of the plaintiffs' case;

• The risk, expense, complexity and likely duration of further litigation;

• The risk of maintaining class action status throughout the trial;

• The amount offered in settlement;

• The extent of discovery completed;

• The stage of the proceedings;

• The experience and views of counsel;

1      • The presence of a governmental participant; and

2      • The reaction of the class members to the proposed settlement.

3      *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1996); *Molski v. Gleich*,

4      318 F.3d 937, 956 (9th Cir. 2003).

5          Second, if the preliminary evaluation of the proposed settlement does not disclose

6      grounds to doubt its fairness or other obvious deficiencies, the court should direct that

7      notice be given to class members of a final fairness hearing, at which arguments and

8      evidence may be presented in support of and in opposition to the settlement. *Newberg on*

9      *Class Actions* (4th Ed. 2008) § 11.25; Manual for Complex Litigation Third§ 30.41 (2009).

10         In reviewing a request for preliminary approval of a class action settlement, this

11     Court is not charged with conducting a detailed analysis of the proposed settlement.  Rather,

12     its task is to determine whether the proposed settlement is within the "range of

13     reasonableness," and whether it is appropriate to notify the class of the terms of the

14     settlement and schedule a formal fairness hearing.  *Newberg on Class Actions* (4th ed. 2008)

15     § 11.25.  According to the Manual for Complex Litigation:

16     
17     > If the proposed settlement appears to be the product of serious, informed, non-
       > collusive negotiations, has no obvious deficiencies, does not improperly grant
       > preferential treatment to class representatives or segments of the class, and falls
18     > within the range of possible approval, then the court should direct that notice be
       > given to the Class Members of a Formal Fairness Hearing, at which evidence may
19     > be presented in support of and in opposition to the settlement.

20
21     *Manual for Complex Litigation*, 3rd, § 30.44 (2009).

22
23     > The strength of the findings made by a judge at a preliminary hearing or
       > conference concerning a tentative settlement proposal may vary. The court may
       > find that the settlement proposal contains some merit, is within the range of
24     > reasonableness required for a settlement offer, or is presumptively valid subject
       > only to any objections that may be raised at a final hearing.
25

26     *Newberg on Class Actions* (4th ed. 2008) § 11.26.

27

28

In making the preliminary fairness evaluation, a court should be mindful of the "strong presumption" that an agreed-upon settlement is fair. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Further, in approving a settlement,

> [t]he court need not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).

## V.   ARGUMENT

### a.   This Court Should Certify the Class for Settlement Purposes Only

#### i.   This Case Satisfies All Four Requirements of FRCP Rule 23(a)

A class action may be certified under the Federal Rules of Civil Procedure if all four prerequisites under Rule 23(a) are established and at least one subsection under Rule 23(b) is met. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004). Plaintiffs assert that the proposed Settlement Class meets these requirements.

When a court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only. *Newberg on Class Actions* (4th ed. 2002) § 11.27. In this case, NSMG has agreed not to oppose Plaintiffs' motion to maintain this action as class action for the purposes of settlement only. Agreement ¶¶ 29, 34, and 35.

### 1.   Numerosity

Rule 23(a) requires numerosity, typicality of the class representatives' claims, adequacy of representation, and commonality (predominance of common issues). Fed. R. Civ. P. 23(a); *see also Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1019 (9th Cir. 1998).

First, with respect to numerosity, the Settlement Class is comprised of over 429 individuals and is therefore numerous enough that joinder of all Settlement Class members is impracticable.  Villanueva Decl. ¶ 9.

### 2. Typicality

Second, Plaintiffs' claims are typical of the Settlement Class.  The typicality standard is "whether other members have the same or similar injury, whether the action is based on conduct that is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanan v. Dataproducts Corp*., 976 F.2d 497, 508 (9th Cir. 1992) (citation and internal quotations omitted).  Plaintiff's claims and those of the Settlement Class members are based on the same alleged course of conduct (deducting and collecting wages, failing to pay all wages at time of separation, failing to reimburse business expenses, fraud, breach of contract), and they are alleged to have suffered similar injuries (fraud, breach of contract, failure to pay wages, reasonable reimbursement, and penalties).

### 3. Adequacy

Third, Plaintiffs will adequately represent the Settlement Class.  Plaintiffs are represented by counsel who is qualified to conduct the litigation.  Villanueva Decl. ¶¶ 21-25; Declaration of Nail Benjamin.  In addition, Plaintiffs' interest in the litigation is not antagonistic to the Class; in other words: there is no disabling conflict of interest that might hinder the prosecution of the action on behalf of the Class. In fact, their interests in the litigation are co-extensive with those of the Class. Plaintiffs were employed by NSMG during the Class Period, have allegedly been injured in the same manner by the same practices or course of conduct as the other Settlement Class members, and seek the same relief as the other Settlement Class members. Plaintiffs further agreed to serve as class representatives and has retained qualified counsel, demonstrating their commitment to bringing about the best possible results for the benefit of the Class.

### 4. Commonality

Fourth, common questions of law and fact predominate here because this action focuses on NSMG's alleged uniform course of conduct with regard to commission agreements and compensation for employees under such agreements. Plaintiffs allege that Defendant fraudulently promised and misrepresented terms of employment inducing them to sign commission agreements, Defendant's compensation under the commission agreements violates various Cal. Labor Code sections and the commission agreement itself, and Defendant failed to pay reasonable reimbursement for business-related expenses.

## ii.   This Case Satisfies At Least One Requirement Under FRCP Rule 23(b)

Finally, with respect to the requirements of subsection (b), Rule 23 (b)(3) allows class certification where common questions of law and fact predominate over individual questions and class treatment is superior to individual litigation.  As stated above, this case involves allegations of common policies and practices regarding entering into commission agreements, terms of the commission agreements, compensation, and unreimbursed expenses.  As for superiority, given the relatively small damages per individual claimant, coupled with the large class size, class treatment is superior to individual litigation.

As other courts have found, when assessing these issues of predominance and superiority, the court may consider that the class will be certified for settlement purposes only.  *Amchem Products, Inc., et. al. v. George Windsor, et. al.*, 521 U.S. 591, 618-20, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).  A showing of manageability of trial is not required. *Id*.  The test is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Id*. at 623; *see* Fed. R. Civ. P. 23(b)(3)(D).  The Settlement Class in this case meets that requirement.

The Court should certify the Class only for purposes of settlement.

## b.   This Court Should Preliminarily Approve the Settlement Agreement

As explained more fully below, the proposed Settlement Agreement before the Court in the present dispute meets the criteria for preliminary approval due to the following: it was reached through arms' length negotiation and bargaining, it involved mediation

before a respected and experienced mediator, the investigation and discovery in the case were sufficient to allow counsel and the Court to act intelligently, and Plaintiffs' Counsel is experienced in similar litigation as well as in other complex matters.  The Proposed Settlement is also fair, reasonable and adequate given the inherent risks of litigation, the risks regarding class certification, and the expense and time consumed by litigation.

### i.   The Settlement is the Result of Serious, Informed, Non-collusive Negotiations.

The Proposed Settlement presented to the Court for preliminary approval is the result of almost one and a half years of litigation, discovery and negotiations between Plaintiffs' and Defendant's counsel, which culminated in two days of private mediation. Although both mediations failed, the Parties were able to reach a settlement after ongoing extensive negotiations.

The Parties vigorously debated the proper application of the law and the uncertainties posed by unsettled questions at issue in this litigation as described above. Each side has strongly advocated its positions concerning the claims and defenses at issue. Each side also recognizes that the expense, delay, and uncertainty of the result after trial and appeal present the danger that an ultimate victory by either side may be of less value than the Proposed Settlement.  Counsel for Plaintiffs and Defendant submit that the Proposed Settlement is in the best interests of all parties.

### ii.   The Settlement is Fair Considering the Potential Damages Per Class Member, And The Value And Risks Relating To Further Litigation.

When considering the fairness of settlement, courts consider the strength of a plaintiffs' case as well as the risk, expense, complexity and likely duration of further litigation. *See Hanlon v. Chrysler Corp.*, 150 F.3d at 1026.  The Parties acknowledge that the facts of this case are disputed.  Plaintiff contends that NSMG is liable for failure to pay wages by unlawful and unauthorized deductions and collections through its commission agreements; liable for breach of contract; liable for unpaid wages due to misclassification, liable for off the clock work, liable for meal and rest violations; liable for fraud based on its false promises and misrepresentations in entering into commission agreements; and liable

1    for failure to reimburse business expenses.  NSMG denies all liability for such claims,

2    maintains that its commissioned employees are properly compensated for all wages in

3    conjunction with its payment policies, maintains that it did not make misrepresentations or

4    false promises in entering into the commission agreements on individualized basis with

5    each employee, maintains it properly classified its Outside Sales Persons as exempt,

6    maintains it paid its employees for all hours worked, maintains it provides lawful meal and

7    rest breaks, and maintains that it reimbursed all business expenses, and maintains that these

8    claims are not certifiable due to the individualized facts and questions relating to each

9    individual employee.

10          There was a significant range of exposure in this case on each of the various claims

11   asserted.  Villanueva Decl. ¶ 13.  On each of the claims, Defendant presented numerous

12   arguments and defenses to class certification and on the merits.  Plaintiffs estimated meal

13   period exposure between $1 Million to $5 Million based on respective averages of one (1)

14   missed meal and one (1) rest period per class member per week and five (5) missed meal

15   periods and five (5) missed rest periods per class member per week during the class period

16   calculated on a daily wage based on the average hourly rate of $11.00/hour.  However,

17   Defendant had a compliant meal period policy and produced time detail records showing

18   substantial compliance.  This claim therefore was limited mainly to the Outside Salespeople

19   who were classified as exempt, and which Defendant maintained were properly classified,

20   thereby creating a greater challenge on class certification.  Even if misclassified (which

21   Defendant did not concede), Defendant maintained that very few Outside Sales Persons

22   worked daily shifts in excess of five hours to trigger a meal period.  The Parties'

23   negotiations considered varying degrees of evidence on both sides with respect to the

24   number of employees that worked shifts in excess of five hours thereby triggering a right to

25   a meal period.  Similarly, Plaintiffs estimated rest period exposure between $1 Million to $5

26   Million based on respective averages of one (1) missed meal and one (1) rest period per

27   class member per week and five (5) missed meal periods and five (5) missed rest periods

28

1   per class member per week during the class period calculated on a daily wage based on the

2   average hourly rate of $11.00/hour.  Defendant presented the same defenses.

3       Plaintiffs estimated $1 Million in exposure for unpaid wages for alleged

4   misclassification.  This was calculated based on assumption of 350 class members who

5   were paid at a daily rate of $92.00 instead of the average hourly rate of $11.50, plus

6   overtime.  This claim also includes statutory waiting time penalties of up to 30 days which

7   is estimated at $2,670.00 per class member.  Defendant presented evidence that Outside

8   Salespeople work more than 50% of their work time out in the field as a means to meet the

9   exemption.  Proving otherwise may have required individualized inquiries instead of being

10  subject to common proof.  Accordingly, settlement negotiations accounted for the risk that

11  this claim may not have been certified under the circumstances, and therefore any potential

12  for recovery could be reduced accordingly.

13      Plaintiffs estimated the exposure for off the clock work to be around $750,000.00.

14  The estimate is based on around $345.00 in unpaid overtime and doubletime per week per

15  Family Service employee who worked "on call".  Plaintiffs estimated an additional $2

16  Million in exposure for hourly sales person based on assumption of only six (6) months'

17  employment.  Defendant was able to show it had policies prohibiting off the clock work and

18  procedures for reporting all working time.  There were some employees who were reporting

19  their on call time and getting paid.  Again, settlement negotiations required consideration

20  for the extent to which this evidence made common proof and potential class recovery for

21  the entire proposed class more challenging.

22       Plaintiffs estimated that liability for unreimbursed personal vehicle use was

23  approximately $2 Million based on an average of 750 miles per month for six (6) months

24  per class member.  Plaintiff believes that 750 miles per month is a low average given that

25  many class members worked in excess of 6 months an even in excess of one year.

26  However, Plaintiffs learned that Defendant provided stipends to some employees who were

27  required to use their personal vehicle for company business, and maintained a policy

28  allowing for reimbursement of mileage.

1   With respect to Plaintiffs cell phone claims, Plaintiffs learned that Defendant

2   provided stipends for cell phones for some employees and land lines accessible to others to

3   perform their job duties.  This created a potential challenge to recovering damages on behalf

4   of the entire class as well as the potential for individualized inquiries instead of proof by

5   common evidence.

6   Plaintiffs estimated the total exposure to be at least $3 Million based on an average

7   of $4,000.00 in unpaid commission per month for three (3) months of employment for at

8   least 300 class members.  Defendants presented arguments and evidence during the informal

9   discovery process that the actual amount in controversy was under $1 Million.  The

10  commission structure at issue was not rolled out until the Spring of 2017 which meant that

11  the issues relating to the Gate and PIPP did not cover the entire proposed class period and

12  that those damages calculations could not pre-date early 2017.  In addition, Defendant

13  provided evidence of some written commission agreements, sales policies and weekly

14  commission statements.  Defendant also presented evidence of some training on the

15  commission structure.  Defendant maintained that there was no fraud and that its

16  commission structure was transparent and understood by its employees.  Defendant argued

17  that the dispute was limited to a brief period of time as the commission structure was being

18  rolled out and employees were still learning about the structure.  The disputed evidence

19  created risks for class certification.

20  In the face of these and other uncertainties, Plaintiffs' Counsel believes that the

21  agreed-upon settlement fairly compensates the Class Members for wages and penalties

22  allegedly owed.  As this Court is undoubtedly aware, the uncertainty of the outcome of a

23  class certification motion and ultimate adjudication of the facts (if there is one) here places

24  both parties in a position of significant risk.  The parties are also informed by an awareness

25  of the extreme expenditures in time and money required to litigate to conclusion class-wide

26  issues regarding the application of California's wage and hour laws.  If this case were

27  certified, it would then need to proceed to trial.  In a case of this size, post-trial and

28  appellate proceedings would be likely to occur, which would surely drag the case even

1    further into the future.  When facing a distant and unsure resolution of the allegations in this

2    action, a swift, sure and substantial settlement is all the more reasonable.  The Parties

3    assessed and valued their respective risks and liabilities during and aside from mediation

4    negotiations to reach the proposed settlement.  *See* Villanueva Decl. ¶¶ 3-17.

### iii.   Sufficient Discovery and Investigation Has Occurred to Assess the Fairness of the Settlement.

Another factor considered for purposes of approving a settlement is the extent of

discovery completed.  *See Hanlon*, 150 F.3d at 1026.  The Parties have conducted thorough

discovery and investigation into Plaintiffs allegations and NSMG's defenses.  *See*

Villanueva Decl. ¶¶ 3-17.  Over the course of the litigation, the Parties obtained sufficient

information to assist with analyzing their respective positions.  *See* Agreement ¶¶ 22-23.

Accordingly, sufficient investigation and discovery has been conducted for the Parties to be

well-informed of the nature and the extent of the Class claims, and to enable both sides to

fully evaluate the settlement proposal for adequacy, fairness and reasonableness.

Defendant produced thousands of pages of documents in response to Plaintiffs'

document requests, and as evidence supporting Defendant's defenses.  The Parties

interviewed key witnesses, debated the data relating to the number of potential class

members, the total number of class wide work weeks based on the number of potential class

members, complex calculations regarding sales commissions and sales quotas under

Defendant's PIPP/Gate system, analyzed hire dates and commission agreements, and

analyzed Defendant's sales practices and how those practices impacted work hours and

overtime claims.  These issues were debated and analyzed extensively with respect to

different locations throughout the Bay Area, including the extent to which the evidence

overlapped or could be distinguished.

### iv.   The Settlement Amount and Method of Allocation are Fair.

Another factor is the amount offered in settlement. *See Hanlon*, l 50 F .3d at 1026.

Based on Plaintiffs' analysis of the data and witness testimony, the claims in this case

created an exposure ranging between $9M and $15M before costs and attorneys' fees

1   following class certification and trial.  Villanueva Decl. ¶ 10.  The gross settlement amount

2   is approximately 13% to 22% of that exposure, which is more than reasonable given the

3   risks involved in this case.

4       As courts have observed, "simply because a settlement may amount to only a

5   fraction of the potential recovery does not in itself render it unfair or inadequate.

6   Compromise is the very nature of settlement." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 618

7   (C.D. Cal. 1979).  In this case, Plaintiffs consider the settlement to be significantly more

8   than a "fraction," particularly considering the various potential complications, dangers and

9   pitfalls that proceeding would entail.

10      Courts recognize that the reasonableness of a settlement is not dependent upon it

11  approaching the potential recovery plaintiffs might receive if successful at trial.  *See In re*

12  *Omnivision Tech., Inc*., 2008 WL 123936 (N.D. Cal. Jan. 9, 2008); see also *Nat'! Rural*

13  *Telecomm. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled

14  law that a proposed settlement may be acceptable even though it amounts to only a fraction

15  of the potential recovery"); *Officers for Justice v. Civil Serv. Comm*, 688 F. 2d 615, 628.

16  (9th Cir. 1982) (it is "the complete package, taken as a whole rather than the individual

17  component parts, that must be examined for overall fairness").

18      Based on the numerous risks in continuing with litigation, which are detailed above,

19  Plaintiffs in the current action chose to obtain for the Class a certain award of significant

20  value when compared to the value of the overall claims. The amount accepted is fair and

21  reasonable.  *See, e.g., Omnivision* 2008 WL 123936 at *5; In re IKON Office Solutions

22  (E.D. Pa. 2000) 194 F.R.D. 166, 183-84 (approving settlement totaling $116 million

23  although plaintiffs estimated their claims to be worth more than $1 billion dollars, or about

24  11.6% of the requested amount for damages); *In re Global Crossing Securities and ERISA*

25  *Litigation* (S.D.N.Y. 2004) 225 F.R.D. 436, 460 (approving partial settlement of $325

26  million, far below the "tens of billions" estimated in damages by the plaintiffs).

27      In terms of the method of allocation, each class member who does not affirmatively

28  opt out will receive a pro rata share of the NSA based on (a) each Class Member's Total

Individual Workweeks; (b) divided by the aggregate number of Total Class Gross Workweeks of all Class Members; (c) multiplied by the value of the Net Settlement Amount.  Each Class Member's Total Individual Workweeks will be determined by reference to the Company's records, subject to each Class Member's right to submit evidence in support of disputed claims.  Agreement ¶ 42.  None are singled out for special treatment (other than Plaintiffs, who are requesting an enhancement payment for their work on the case and the risks they took in being the named plaintiffs).

### v.  Plaintiffs' Enhancement Award Is Appropriate.

The $2,000 Enhancement Award to the named Plaintiffs is fair and not the result of improper self-interest.  Federal courts in California frequently award enhancement payments to lead plaintiffs for their efforts in prosecuting cases.  *See, e.g., Glass v. UBS Financial Services, Inc.*, 2007 WL 221862, *16 (N.D. Cal. 2007)  (approving payments of $25,000 to each named plaintiff); *In re Heritage Bond Litigation*, 2005 WL 1594403, *18 (C.D. Cal. 2005) (awarding incentive payments of between $5,000 and $18,000; *Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 300 (N.D. Cal. 1995) (awarding $50,000 to a lead plaintiff).  Courts have thus recognized that the important goals of the class action vehicle will best be served if individuals are given reasonable incentives to step forward and represent their co-workers.

In this context, a payment to the named Plaintiffs of $2,000.00 out of a total $2,200,000.00 settlement is both fair and reasonable.  Mr. Uschold and Mr. Dangerfield assisted Plaintiffs' counsel with investigation of the claims by, among other things, participating in multiple telephone conferences to discuss NSMG's policies and practices and their experiences as employees, identifying key witnesses and additional potential class members, and producing documents needed to assist counsel with assessing the bases and strength of the claims.  Plaintiffs also risked being responsible for Defendant's costs if the case was lost and having their future employment prospects damaged by the fact that they are named plaintiffs in a class action lawsuit against a former employer.

Plaintiffs propose adding Plaintiffs Naples and Almendarez.  Both Naples and Almendarez are named as plaintiffs in the proposed First Amended Complaint.  They also assisted in the same ways as Uschold and Almendarez, and they represent class members and sub-class members that are not otherwise adequately represented by Uschold and/or Dangerfield.

### vi.   The Amounts Allocated to Attorneys' Fees and Costs Should be Approved

Plaintiffs' Counsel will request attorneys' fees not to exceed $736,200.00 (1/3 of the Total Class Action Settlement Amount) and litigation expenses not to exceed $20,000.00, based on the award achieved on behalf of the class, the complexities of the factual and legal issues involved with Defendant's commission system and varying categories of potentially exempt and non exempt employees, and the time, skill, and experience required to analyze and navigate these issues effectively and successfully for Plaintiffs and the class.  *See Williams v. MGM-Pathe Communications Co*., 129 F.3d 1026, 1027 (9th Cir. 1997) (attorney fee award of 33.3% based on maximum settlement value in a claims-made settlement).

### vii.   Both State Officials Will Be Provided With The Opportunity To Review And Consult Regarding The Settlement.

Because this case was removed under the Class Action Fairness Act, NSMG will be required to provide notice of the Proposed Settlement and its terms to the California Attorney General and appropriate officials in California and each state where any Class Member resides.  28 U.S.C. § 1715.  If these entities have any concerns with the Proposed Settlement, the Court will be apprised of those concerns prior to the final fairness hearing.

### viii.   Plaintiff's Counsel Have The Requisite Experience.

Another factor considered in determining the fairness of a settlement is the experience and views of counsel.  *Hanlon*, l50 F .3d at 1026.  Plaintiffs' Counsel have collectively practiced law for over 16 years, have focused a substantial amount of their practice on employment law including class and representative actions under the California Labor Code, have obtained millions of dollars on behalf of plaintiffs in employment cases as well as general litigation matters, and have litigated dozens of class actions and

representative actions during their careers (both plaintiffs matters and defense matters).
Villanueva Decl. ¶¶ 21-25; Declaration of Na'il Benjamin.  Based on this combined
experience, Plaintiffs' Counsel strongly believe that the settlement is fair and appropriate
given all factors involved.

### ix.   The Degree of Opposition to the Proposed Settlement.

Another factor when considering fairness is the reaction of the class members.  *See
Hanlon,* 150 F .3d at 1026.  Once all Class Members have received notice of the terms of
the Proposed Settlement, the Court will be able to consider the reaction of the Class at the
final fairness hearing.  Due to the fairness and adequacy of the Proposed Settlement, the
Parties do not anticipate any opposition.

### c.   <u>This Court Should Approve the Proposed Notice and Related Forms</u>

Due process and judicial interpretation of the notice provisions of Fed. R. Civ. P.
23(c) requires that notice be provided to class members by the best reasonable method
available. *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974); *Cartt v. Superior Court*, 50
Cal. App. 3d 960 (1975).

When the named parties of a class action reach a proposed settlement, class
members must be notified of the terms of the proposed settlement so that they have an
opportunity to consider the terms of the settlement.  *Newberg on Class Actions* (4th ed.
2002) § 11.30.  Notice of a proposed settlement must inform class members (1) of the
nature of the pending litigation; (2) of the settlement's general terms; (3) that complete
information is available from court files; and (4) that any class member may appear and be
heard at the final fairness hearing.  *Id*. at § 11.53.

To assess the adequacy of the proposed notice, the Court must consider both the
notice's mode of dissemination and its content.  *Id*.  The nature and extent of class notice of
a proposed settlement are left to the discretion of the trial court judge.  *Id*.  Notice is
designed to be only a summary of the litigation and the settlement and need not be unduly
specific.  *Id*.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In this case, the proposed Class Notice provides a description of the litigation, a description of the settlement, instructions for participating in or opting out of the settlement, instructions for objecting to the settlement, details on the final settlement approval hearing, contact information for class counsel, and instructions for obtaining court records.  *See* Class Notice (Agreement ¶ 71, Ex. A).  The Notices will also be personalized for each Class Member by listing their specific recovery amount.

The proposed mode of dissemination of the Class Notice is also adequate.  NSMG has agreed to pay (out of the Total Class Action Settlement Amount) a third-party claims administrator to send the Notice Packet by first class mail to the last known address of each Class Member (which will be verified by a check of the National Change of Address database).  Such notice is the best notice practicable under the circumstances of this action.  The names and last known addresses of virtually all Class Members can be identified through a careful search of NSMG's employment records.

If a Notice is returned with a forwarding address, the Administrator will re-mail the Notice to the new address. If a Notice is returned without a forwarding address, the Administrator will conduct a skip trace to locate the correct address and, if a new address is found, forward the Notice to that address.  These notice procedures are reasonable to ensure that class members are notified of the settlement and of their rights under the settlement and that they are paid appropriately under the terms of the Settlement Agreement.

### d.  This Court Should Schedule a Final Fairness Hearing

The last step in the settlement approval process is the fairness hearing, where Settlement Class members who timely submit objections to the Agreement may be heard, and this Court makes a final determination about the propriety of the Agreement.  Based on the timetables for giving notice, submitting claims and making objections to the Agreement, Plaintiff requests that the fairness hearing in this case be scheduled on or before July 19, 2019.

///

///

25

1   **VI.      CONCLUSION**

2           For the reasons discussed above, the Proposed Settlement Agreement is fair,

3   adequate, and reasonable, and in the best interests of the Settlement Class. Plaintiffs

4   requests that the Court grant preliminary approval of the Proposed Settlement, confirm

5   Class Counsel and the Class Representative as requested, authorize the mailing of the

6   proposed Notice and Claim Form to the members of the Settlement Class, and schedule a

7   final fairness hearing.

8

9   Dated:  August 12, 2019                              Respectfully submitted,

10                                                        BENJAMIN LAW GROUP, PC.

11                                                        By _____
                                                              NA'IL BENJAMIN, ESQ.

12                                                        Attorney for Plaintiffs
                                                          WILLIAM USCHOLD and
13                                                        TYRONE DANGERFIELD

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AMENDED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO: 3:18-cv-01039-JSC