BENJAMIN LAW GROUP, P.C.
NA'IL BENJAMIN, ESQ. (SBN 240354)
nbenjamin@benjaminlawgroup.com
ALLYSSA VILLANUEVA, ESQ. (SBN 312935)
allyssa@benjaminlawgroup.com
1290 B Street, Suite 314
Hayward, California 94541
Telephone:    (510) 897-9967
Facsimile:    (510) 439-2632

Attorneys for Plaintiffs
WILLIAM USCHOLD and TYRONE DANGERFIELD

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM USCHOLD, TYRONE DANGERFIELD, TIANA NAPLES, and JOSE ALMENDAREZ, each individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Northstar Memorial Group; Northstar Memorial Group d/b/a Chapel of the Chimes; Chapel of the Chimes; and NSMG Shared Services, LLC d/b/a Northstar Memorial Group Shared Services LLC)and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 3:18-cv-01039-JSC<br><br>**CLASS AND REPRESENTATIVE ACTION**<br><br>**FIRST AMENDED COMPLAINT**<br><br>(1) **Unlawful Collection of Wages Earned Under Cal. Lab. Code Section 221;**<br>(2) **Unauthorized Deduction Under Cal. Lab. Code Section 224;**<br>(3) **Failure to Reimburse For All Necessary and Reasonable Expenditures And Losses Under Cal. Lab. Code Section 2802;**<br>(4) **Failure to Pay Wages Under Cal. Lab. Code Section 510 *et seq.* and Lab. Code Section 1174;**<br>(5) **Breach of Contract; and**<br>(6) **Fraud – Intentional Misrepresentation;**<br>(7) **Fraud – False Promise;**<br>(8) **Failure to Pay Minimum Wages in Violation of Cal. Lab. Code Section 1194 and 1197;**<br>(9) **Failure to Provide Meal Periods in Violation of Cal. Lab. Code Sections 226.7, 512, and 1198;**<br>(10)    **Failure to Provide Rest Periods in Violation of Cal. Lab. Code Sections 226.7 and 1198;**<br>(11)    **Failure to Provide Accurate Wage Statements in Violation of Cal. Lab. Code Sections 226 and 226.3;**<br>(12)    **Violation of Cal. Lab. Code Section 204 for Failure to** |

- 1 -

**Timely Pay Wages;**

**(13)        Failure to Timely Pay All Final Wages in Violation of Cal. Lab. Code Sections 201-203;**

**(14)        Violation of Cal. Business & Professions Code Section 17200.**

**(15)        Violation of the Private Attorneys General Act, Labor Code Sections 2698 *et seq*.**

## INTRODUCTION

1.      Individual and representative Plaintiffs, TYRONE DANGERFIELD, WILLIAM USCHOLD, TIANA NAPLES, and JOSE ALMENDAREZ bring this class and representative action on behalf of themselves and all of the commission-earning employees ("Employees") employed by Northstar Memorial Group; Northstar Memorial Group d/b/a Chapel of the Chimes; Chapel of the Chimes; and NSMG Shared Services, LLC d/b/a Northstar Memorial Group Shared Services LLC) and DOES 1-50, inclusive (collectively referred to as "Defendants" or "NSMG" herein), from the date four years prior to filing this Complaint through the date of trial in this action.

2.      Defendants violate the California Labor Code through their commission payment system.  Defendants employed sales personnel that earned commission.  Commission-earning employees consisted of employees that received only commission, but not hourly wages; an hourly wage plus a commission; and salaried employees that also received commission.

3.      Each commission-earning employee that earned a wage or salary was required to meet a quota.  Defendants called this quota a Gate.  The Gate was described as a point system, and it was set at 42,000 points each week.

4.      Although there were some exceptions, the Employees' weekly sales quota was not typically adjusted for absences.  Employees were responsible for meeting a Gate of 42,000 points each week by producing sales sufficient to exceed this 42,000 point Gate.  If the Employee did not meet the Gate, they received a shortfall based on the point differential between their Gate and the actual sales points earned during the week.

- 2 -

5.      Unbeknownst to Employees, the shortfall carried into the following week.  If an Employee did not have any sales points the prior week, their new Gate for that week totaled 82,000 points. If during this new week, the employee's sales points exceeded 42,000 points, but did not exceed 82,000 points, they were still barred from receiving a commission because they were still in a negative point balance due to the shortfall and new weekly Gate.  Mathematically, once an employee missed a sales target, they would never be able to earn a commission in future weeks unless their sales points met and exceeded both the regular 42,000-point Gate and the added shortfall.

6.      Defendants knew this information but concealed it from each Employee.  Additionally, Defendants did not tell Employees that if they exceeded the quota, the excess commission points were neither paid nor accumulated to offset future weeks.

7.      Plaintiffs were unaware of the terms of the commission system and its operation until several months into employment.  And even then, Defendants could not adequately explain the compensation system.  Defendants failed to ever adequately explain the compensation system and obtain a written agreement from each commission-earning employee reflecting all of the material terms and conditions of the commission structure.

8.      The Employees that earned hourly wages, plus commission, regularly worked "off of the clock" without compensation.  These hours included being scheduled to be on call, responding to calls from clients and employees, leaving work to travel to client appointments, meeting with clients and doing sales presentations on weekends, traveling to funerals and/or burials for client families, securing signed contracts from new clients, and other "off of the clock" work for which they were never compensated.

9.      Defendants also misclassified Employees under the outside sales overtime exemption, resulting in the failure to pay minimum wage and overtime premium wages.

10.     Additionally, Defendants required or knew that Employees used personal property for work including personal vehicles for travel to meet with clients and prospective clients, and personal cell phones for business calls.  Employees regularly used their cell phones for work purposes, even when working on site because Defendants did not provide enough phones for each

- 3 -

**FIRST AMENDED COMPLAINT**
Case No. 3:18-cv-01039-JSC

commission-earning Employee to use when needed.

11.     Defendants failed to reimburse all necessary and reasonable business expenses as required by California law.

12.     Defendants have violated numerous Labor Code provisions in its operation of the commission system without express authorization from Employees and resulting in unlawful deductions of earned commissions as well as its failure to reimburse Employees when they incurred business-related expenses.

13.     Plaintiffs also allege that these acts, which violate the California Labor Code, constitute unlawful and unfair business practices in violation of California Unfair Competition Laws ("UCL").

14.     In this action, Plaintiffs, on behalf of themselves and all class members, seek unpaid wages, reimbursement for necessary and reasonable business expenses, derivative penalties for failure to provide accurate wage statements and failure to timely pay final wages, statutory penalties, injunctive relief, attorneys' fees and costs, prejudgment interest, and other relief the court may deem appropriate.

15.     Plaintiffs also seek civil penalties for the above acts under the Private Attorneys General Act of 2004.

16.     The "Class Period" is designated as the time from four years prior to filing this Complaint through the date of trial based upon the allegations that the violations of the Labor Code and the UCL have been ongoing since at least four years prior to the date of this Complaint and are continuing.

## JURISDICTION AND VENUE

17.     Jurisdiction is proper because Defendants operated as employers in the State of California.  This Court has jurisdiction over the Labor Code claims relating to the commission system and unpaid wages pursuant to Labor Code sections 510 and 1194. This Court has jurisdiction over the fraud and contract claims pursuant to Civil Code section 3300 *et seq*.

18.     Venue in Alameda County is appropriate under California Code of Civil Procedure section 395(a) because the unlawful practices alleged herein were committed in the County of

- 4 -

**FIRST AMENDED COMPLAINT**
Case No. 3:18-cv-01039-JSC

Alameda; Defendants and/or DOES 1-50 maintain offices in the County of Alameda, and Plaintiffs worked for Defendants in the County of Alameda.

<strong><u>PARTIES</u></strong>

**I.      Individual Plaintiffs.**

19.      Plaintiff William Uschold was employed by Defendants until Defendants unilaterally terminated his employment. Uschold was induced to work for Defendants by representations from Regional Manager Robin Russell who promised Uschold a position as a Regional Manager, an off-site office, and a budget for his sales team.  Instead, Uschold was hired to the lower-ranking position of Outside Supervisor and his primary job duties was supervision of telemarketing employees and outside representatives.  Uschold was subject to Defendants' commission system as were all employees he supervised.  Uschold worked out of Defendants' offices in Oakland, CA, Hayward, CA and Half Moon Bay, CA.

20.      Plaintiff Tyrone Dangerfield was employed with Defendants in the position of Family Services Counselor at Defendants' location in Hayward, CA.  Dangerfield's job duties included client relations, administration, and correspondence for funeral service arrangements and burial product purchases.

21.      Plaintiff Tiana Naples worked as a commission-earning employee before she was unilaterally converted into a commission-only employee.  Ms. Naples was not paid a penny during the time she was forced to work without pay on a commission only basis.  Ms. Naples worked off of the clock by traveling to client appointments to close business, answering phone calls from clients and employees when calls were made to her personal cell phone, prospecting, and when visiting clients to secure contract paperwork and other information needed for closing a sales transaction to earn her commission.

22.      Plaintiff Jose Almendarez was also a commission-earning employee that was unilaterally converted to being paid on a commission-only basis.  He also worked off of the clock, and he worked at times without any pay, or enough pay to cover his actual hours worked.  Like other commission-earning employees, Mr. Almendarez used his personal vehicle and cell phone

- 5 -

1   when receiving calls from clients, visiting clients to secure contract paperwork, making

2   presentations, and other job duties necessary for trying to meet his quota.

3   **II.    Defendants**

4         23.    On information and belief, Defendants are registered as a foreign entity that

5   operates and employs California citizens under the laws of the state of California throughout the

6   state of California.  Defendants' Bay Area business operates as Chapel of the Chimes; including

7   numerous deviations of this name.  Defendants operate under additional names throughout

8   California and employ class members in these locations, amongst others: Accucare Cremation and

9   Funerals in San Diego, Carlsbad, and Fullerton); Chapel of the Chimes Mortuary, Crematory and

10   Cemetery (Hayward); Chapel of the Chimes Mortuary, Crematory and Columbarium (Oakland);

11   Claremont Mortuary (San Diego); Greenwood Mortuary, Crematory and Memorial Park (San

12   Diego); Skylawn Funeral Home, Crematory and Memorial Park (San Mateo); Smart Cremation

13   California (Rancho Mirage); Sunset Lawn/Chapel of the Chimes Mortuary, and Crematory and

14   Cemetery (Sacramento).  NSMG is in the business of funeral and burial services.

15         24.    Defendants DOES 1-50 are sued herein under fictitious names.  Their true names

16   and capacities, whether individual, corporate, associate, or otherwise, are unknown to Plaintiffs.

17   Plaintiffs are informed and believe and based thereon allege that each of the Defendants sued

18   herein as a Doe is responsible in some manner for the events and happenings herein set forth and

19   proximately caused injury and damages, and any reference to "Defendant" shall mean "Defendants,

20   and each of them."  Plaintiffs will amend this complaint to show their true names and capacities

21   when they have been ascertained.

22                              **FACTUAL BACKGROUND**

23   **I.    Commission-Based Payment System**

24         25.    NSMG purports to provide its employees with a base compensation (most are

25   hourly, and some are salaried), plus commission based on the value of products and services sold.

26   The commission system is referred to as "Production Incentive Pay" which utilizes a point system

27   based on the value of each sale.  However, Defendants used the promise of commission as a tool to

28   sucker Plaintiffs into working for Defendants, selling its funeral, mortuary, and crematory services,

- 6 -

and increasing the profits of Defendants and its top executives.

26.    Defendants provided each sales employee with an offer letter, requiring them to sign the same, stating that the employee's compensation plan entitles them to participate in Defendants' Production Incentive Pay ("PIP") plan.  This commission system states that the PIP commissions "will be paid if production points are larger than the weekly performance gate.

27.    Specifically, employees were charged 42,000 points as a "Gate" every week.  This Gate is essentially a sales quota.  Although there were some exceptions, the employee's weekly sales quota was not typically adjusted for absences.  Employees were responsible for meeting a Gate of 42,000 points each week by producing sales sufficient to exceed this 42,000 point gate.  Due to the higher minimum wage in Oakland, NSMG charges Employees at its Oakland, CA location 52,000 Gate points a week.

28.    However, Defendants would also maintain a "shortfall" system.  The shortfall system is designed to punish employees that miss work or fail to meet sales performance goals during any single week.  These shortfalls are cumulative and roll over each week an employee does not reach the quota.  Thus, if an Employee fails to reach quota in the first week of the month, the Employee will have a negative balance regardless of whether that employee worked 40 hours, missed work due to illness or vacation, or actually worked 50 hours in that week.  If the employee did not meet the Gate, they received a shortfall based on the point differential between their Gate and the actual sales points earned during the week.

29.    However, if an Employee exceeded the quota, those excess points are lost and no additional compensation is actually provided.

30.    Unbeknownst to employees, the shortfall carried into the following week.  If an employee did not have any sales points the prior week, their new Gate for that week totaled 82,000 points.  If during this new week, the employee's sales points exceeded 42,000 points, they were still barred from receiving a commission because they were still in a negative point balance due to the shortfall and new weekly Gate.  Mathematically, once an employee missed a sales target, they would never be able to earn a commission in future weeks unless their sales points met and exceeded both the regular 42,000 point Gate and the added shortfall.  Naturally, if an employee had

**FIRST AMENDED COMPLAINT**
Case No. 3:18-cv-01039-JSC

two bad sales weeks and did not earn any points in those two weeks, the employee needed to earn points in excess of the point value of three weeks before they could receive a commission.

31.    This compensation system deprived sales employees of thousands of dollars in weekly and monthly commissions.

32.    NSMG imposed the commission point system on Plaintiffs without written notice, explanation, or agreement.

33.    Plaintiffs received no other forms of compensation from NSMG.  This compensation system was "rolled-out" to all sales employees throughout the state of California.

**II.    Work Related Use of Personal Property.**

34.    Plaintiff Uschold was tasked with sales and supervision of employees who conducted sales.  Uschold knows that NSMG required sales employees throughout California to travel to NSMG's various locations, to meet with current and prospective clients at their homes, and to travel around each NSMG location.  Each of these locations have large burial ground areas. These Employees used their personal vehicles for travel incurring costs including, but not limited to, gas, mileage, maintenance, and toll.

35.    NSMG does not provide a company vehicle but requires these employees to travel in order to perform their job duties.

36.    Plaintiffs Dangerfield, Naples, and Almendarez were required to incur these same costs and expenses as sales employees when required to meet clients or prospective clients as a part of their sales activities and for the purpose of earning a commission.  These types of travel and visits were routine and customary for NSMG sales employees in the state of California.  This includes the use of cell phones to perform these essential job functions.

37.    Plaintiffs' compensation did not include reimbursement for all work-related expenses.

**III.    Failure to Pay Hourly, Overtime, and Minimum Wages.**

38.    Defendants also failed to compensate hourly employees like Dangerfield, Naples and Almendarez when performing job duties outside of their regular work hours, including but not limited to, off the clock work for work performed during on-call status, travel to meet with

- 8 -

**FIRST AMENDED COMPLAINT**
Case No. 3:18-cv-01039-JSC

1    customers and/or attend events, work performed outside of scheduled work hours, time spent

2    taking rest periods, and time spent working during meal periods.    These employees did not

3    receive hourly wages, overtime wages, or double time wages when working more than 8 hours in a

4    day, more than 40 hours in a week, more than six days in a week, or more than 12 hours in a day.

5        39.    As a result, many of these employees were not paid for all hours worked, or

6    minimum wage, during the class period.

7    **IV.    Failure to Provide Meal and Rest Breaks**

8        40.    Plaintiffs allege Defendants maintain a pattern and practice of not providing

9    Plaintiffs and, on information and belief, other similarly situated and/or aggrieved sales employees

10    with legally compliant meal and rest periods, even though Plaintiffs and other similarly situated

11    and/or aggrieved employees worked shifts requiring meal and rest periods in compliance with the

12    Wage Order and California law.

13        41.    Defendants did not always compensate Plaintiffs and, on information and belief,

14    other similarly situated and/or aggrieved sales employees an additional hour of pay at their

15    applicable regular rate of pay on those shifts that Plaintiffs and other similarly situated employees

16    were not authorized or permitted to take a compliant meal or rest periods, in violation of Labor

17    Code § 226.7, Labor Code § 512, and Labor Code § 1198.

18    **V.    Misclassification as Exempt Employees.**

19        40.    Defendants misclassified outside sales employees as exempt, despite Defendants'

20    knowledge that employees did not customarily and regularly spend more than half their working

21    time conducting sales away from Defendants' place of business.  Additionally, Defendants

22    unilaterally converted Ms. Naples, Mr. Almendarez, and other employees from hourly to

23    commission-only compensation.  Commission-only sales employees are not paid a draw, advance,

24    or any hourly wages for any time that they work.  They do not receive meal and rest breaks in

25    compliance with California law.  They are not compensated for paid rest breaks.  They receive

26    compensation only if they complete a sale.  Their compensation is not adjusted to ensure they are

27    paid minimum wage, or for all hours worked, including rest breaks.

28        41.    As a direct consequence of Defendants' illegal misclassification, Defendants did not

- 9 -

1    keep accurate records of the actual hours that Plaintiffs and, on information and belief, other

2    similarly situated and/or aggrieved Commission-only employees were under the control of

3    Defendants, as well as all wages earned.  On information and belief, Defendants failed to keep

4    accurate records of Plaintiffs' and other similarly situated and/or aggrieved employees' hours

5    worked when Defendants failed to record the proper beginning and ending of each work shift, rest

6    break time, and meal period, in addition to the total hours worked during the pay period, among

7    others.

8    **VI.    Derivative Wage Statement and Final Pay Violations.**

9        42.    Defendants have a policy and practice of failing to furnish employees with accurate

10   wage statements, as their wage statements do not accurately reflect all hours worked, and therefore

11   do not accurately reflect the gross and net wages earned.

12       43.    Defendants have a policy and practice of not compensating employees for all earned

13   wages, including wages for commissions and off the clock work, due either upon termination or

14   within 72 hours of an unnoticed quit.

15                    **CLASS AND REPRESENTATIVE ACTION**

16       44.    Pursuant to California Code of Civil Procedure § 382, this action is brought as a

17   representative action as to claims for unlawful wage deductions and failure to reimburse necessary

18   and reasonable business expenses under the Labor Codes and UCL.  Plaintiffs are representative of

19   other commissioned employees and are acting on behalf of their interests.  The similarly situated

20   employees are known to NSMG and readily identifiable through NSMG's own records.  The Class

21   Plaintiffs seek to represent is defined as:

22              All former and current commissioned employees ("Class Members")
             employed by Defendants within the State of California within four years of
23              the filing of this Complaint until the entry of judgment after trial.

24   Plaintiffs also propose that the Class will be subdivided into sub-classes consisting of:

25              (1) all Class members who were fraudulently misled regarding the
             terms of the NSMG commission structure at the time of hiring or at
26              the time of implementation of the commission plan;

27              (2) all Class members who were not reimbursed for reasonable and
28              necessary costs incurred in relationship to the use of personal

**FIRST AMENDED COMPLAINT**
Case No. 3:18-cv-01039-JSC

property as required by California law; including, but not limited to, gas, mileage, insurance, vehicle registration, and toll fare, for personal vehicle use; and monthly payment for cell phone use;

(3) all Class members subjected to unlawful payroll deductions or otherwise not paid all commissions earned;

(4) all Class members who were not provided an accurate written commission agreement;

(5) all Class members who were not paid minimum wage because they: were paid $10.50/hour and worked any time off the clock during the week ; were paid $11.00/hour and worked 1-2 hours off the clock during the week; and/or were paid $12.00/hour and worked more than 2 hours off the clock during the week; and

(6) all Class members who were hourly employees but not paid wages for time worked "off of the clock."

(7) all Class members who were misclassified as exempt employees;

(8) all Class members who were denied meal and rest periods;

(9) all Class members who were not provided accurate, itemized wage statements;

(10) all Class members who were not timely paid for all owed wages during employment; and

(11) all Class members who were not timely paid for all owed wages upon the termination of employment.

Membership in one subclass is not mutually exclusive of membership in a different subclass. Plaintiffs believe that many or most Class members are members of all subclasses.

45.     The persons in the Class, and in each subclass, are so numerous that joinder is impracticable, and the disposition of these claims in a class action rather than in individual actions will benefit the parties and the Court. On information and belief, the Class consists of more than 50 people. Plaintiffs further allege, based on information and belief, that there is not less than 10 people in each subclass.

46.     There is a well-defined community of interest in common questions of law and fact. Common questions of law and fact include questions raised by the individual Plaintiffs' allegations that Defendants failed to reimburse necessary and reasonable business expenses and unlawfully deducted wages in violation of various state laws. The common questions apply to the Class in that

- 11 -

they are all subject to the same policies, acts, and omissions of Defendants. Common questions of law and fact include:

    a) Whether Defendants' failure to reimburse reasonable and necessary travel expenses incurred violates Labor Code § 2802;

    b) Whether Defendants' failure to reimburse reasonable and necessary personal cell phone use by its Class Members work-related purposes violates Labor Code § 2802;

    c) Whether Defendants' commission compensation method violates Labor Code § 221;

    d) Whether Defendants' failure to obtain authorization and assent from Class Members to deduct from commission actually earned violates Labor Code § 224;

    e) Whether Defendants failed to pay Class Members minimum wage;

    f) Whether Defendants failed to pay Class Members for all hours worked;

    g) Whether Defendants misclassified Class Members as exempt;

    h) Whether Defendants failed to provide meal and rest breaks in compliance with Labor Code § 226.7, § 512, § 1198 and the applicable IWC Wage Order;

    i) Whether Defendants misrepresented the terms of compensation for Class Members;

    j) Whether Defendants breached their written agreement regarding compensation with Class Members;

    k) Whether Defendants' various violations of the Labor Code serve as predicate violations of the UCL;

    l) Whether Defendants' failed to provide accurate, itemized wage statements to Class Members; and

    m) Whether Defendants owe Class Members waiting time penalties for failure to timely pay all wages earned.

47.    Common questions of law and fact predominate over any questions affecting only individual Class members.

48.    Plaintiffs' claims are typical of those of the claims of the Class as a whole because the individual Plaintiffs are similarly affected by Defendants' policies, acts, and omissions.

49.    Plaintiffs are adequate class representatives because they are directly affected by

- 12 -

Defendants' acts and omissions. Plaintiffs have no interests that conflict with or are antagonistic to the interests of the Class. Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class members and have experience in representing clients in class and individual actions involving employment rights.

50.    There is no plain, speedy, or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for the Defendants and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.

51.    References to Plaintiffs below shall include each individual Plaintiff and each member of the proposed Class, unless otherwise indicated.

**FIRST CAUSE OF ACTION**

**UNLAWFUL DEDUCTION OF WAGES UNDER LABOR CODE SECTION 221**

**(All Plaintiffs Against All Defendants)**

52.    Plaintiffs re-allege and incorporate paragraphs 1 through 51 inclusive, of this Complaint as though fully set forth herein.

53.    Once a commission is earned, it is considered a wage which is unlawful for an employer to recoup. *See Koehl v. Verio, Inc*. (2006) 142 Cal. App. 4th 1313, 1329-1337. Defendants' commission system resulted in deductions from commission actually earned by operation of its rollover shortfall points system for weeks where an Employee did not meet the set quota.  Furthermore, Defendants accumulated the deficit points against Employees but not commission points earned in excess of the quota.

54.    As a result of Defendants' unlawful policies and acts, Plaintiffs are owed unpaid wages plus interest, penalties, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**

**UNAUTHORIZED DEDUCTION OF WAGES IN VIOLATION OF LABOR CODE**

**SECTION 224**

**(All Plaintiffs Against All Defendants)**

- 13 -

55.     Plaintiffs re-allege and incorporate paragraphs 1 through 54, inclusive, of this Complaint as though fully set forth herein.

56.     Defendants subjected Plaintiffs to its commission-based system without express written consent or acknowledgement. As earlier alleged and explained, Defendants commission policy operates to deduct from commissions actually earned. There is strong public policy requiring an express agreement from the employee to an employer's right to recoup or charge back commission under specific circumstances. *See Koehl*, 142 Cal. App. 4th at 1334.  Thus, Defendants' failure to inform Plaintiffs of the operation and terms of its commission system makes the deductions to earned commissions unauthorized and unlawful.

57.     As a result of Defendants' unlawful acts and omissions, Plaintiffs are owed unpaid wages plus interest, penalties, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**

**FAILURE TO REIMBURSE FOR REASONABLE AND NECESSARY BUSINESS EXPENSES UNDER LABOR CODE SECTION 2802**

**(All Plaintiffs Against All Defendants)**

58.     Plaintiffs re-allege and incorporate paragraphs 1 through 57, inclusive, of this Complaint as though fully set forth herein.

59.     Defendants have failed to reimburse Plaintiffs for costs and expenses the Plaintiffs incurred when they were required to use their personal property as a necessary part of performing their job duties for Defendants thereby relieving Defendants of those business expenses.

60.     As a result of the unlawful acts of Defendants, and each of them, Plaintiffs and the Class are owed expense reimbursement in amounts to be proven at trial, and are entitled to recovery of such amounts, plus interest, penalties, and attorney's fees and costs.

**FOURTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(All Plaintiffs Against All Defendants)**

61.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 60, inclusive, of this complaint as through fully set forth herein.

- 14 -

**FIRST AMENDED COMPLAINT**
Case No. 3:18-cv-01039-JSC

62.     Plaintiffs and Defendants entered into commission agreements which are contracts.

63.     Plaintiffs have performed all of their obligations, covenants, and conditions required under the agreements to trigger Defendants' obligations except to the extent any such obligations, covenants, or conditions have been excused, prevented, or waived by Defendants' own acts and omissions.

64.     Defendants breached the agreement as detailed above.  Specifically, Defendants failed to meets its obligation to pay commissions earned by Plaintiffs under the terms of the commission agreement; attempted to unilaterally alter the terms without Plaintiffs' knowledge or consent; and made deductions from Plaintiff's earned commission wages.

65.     Plaintiffs have been damaged as a result of Defendants' breach in an amount to be proven at trial.

66.     Plaintiffs seek all remedies available including specific performance and contractual damages.

**FIFTH CAUSE OF ACTION**

**UNPAID WAGES IN VIOLATION OF CAL. LABOR CODE SECTIONS 510 AND 1174**

**(All Plaintiffs Against All Defendants)**

67.     Plaintiff realleges and incorporate by reference paragraphs 1 through 65 inclusive, of this complaint as through fully set forth herein.

68.     Plaintiffs were regularly required to work 10 to 11 days consecutively for an average of 9-10 hours per day.  Defendants required Plaintiffs to be "on call" in the case of a death as their business is providing funeral and burial services.  Defendants have reprimanded Plaintiffs for being unavailable to meet with clients during when not scheduled to work and outside of Defendants' normal business hours.

69.     Defendants did not compensate Plaintiffs for the time required to be "on call" or "off the clock" in violation of state law which considers "on call" time as compensable hours worked. *See* IWC Wage Orders, Section 2(K); *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 584.

70.     Plaintiffs and other similarly situated Commission-only sales employees were

- 15 -

misclassified as exempt and not compensated for all of the hours worked.   They were required to work off the clock.

71.     Defendants did not keep accurate records of the hours worked by Plaintiffs or similarly situated employees who were required to work off the clock in violation of California Labor Code Section 1174.

72.     As a result of Defendants' policies, Plaintiffs are owed unpaid wages for all time spent on-call in addition to liquidated damages, interest, penalties, and attorneys' fees and costs.

<u>**SIXTH CAUSE OF ACTION**</u>
**FRAUD – INTENTIONAL MISREPRESENTATION**
**(Plaintiffs against all Defendants and DOES 1-10)**

73.     Plaintiffs hereby incorporate by reference, paragraphs 1 through 72, inclusive of this complaint as though fully set out herein.

74.     Defendants provided each Plaintiffs with an offer letter, requiring them to sign the same, stating that the employee's compensation plan entitles them to participate in Defendants' Production Incentive Pay ("PIP") plan.  This commission system states that the PIP commissions "will be paid if production points are larger than the weekly performance gate."

75.     Defendants' representations were false.

76.     Defendants knew that the representation that the PIP commissions "will be paid if production points are larger than the weekly performance gate" was false.  Defendants also knew that they were misleading employees with this false information; including the omission and failure to inform them that Defendants would also maintain a "shortfall" system.  The shortfall system is designed to punish employees that miss work, or fail to meet sales performance goals during any single week.  Specifically, employees were charged 42,000 points as a "Gate" every week.  This Gate is essentially a sales quota.  Although there were some exceptions, the employee's weekly sales quota was not typically adjusted for absences.  Employees were responsible for meeting a Gate of 42,000 points each week by producing sales sufficient to exceed this 42,000 point gate.  If the employee did not meet the Gate, they received a shortfall based on the point differential

between their Gate and the actual sales points earned during the week. Unbeknownst to employees, the shortfall carried into the following week.  If an employee did not have any sales points the prior week, their new Gate for that week totaled 82,000 points. If during this new week, the employee's sales points exceeded 42,000 points, they were still barred from receiving a commission because they were still in a negative point balance due to the shortfall and new weekly Gate. Mathematically, once an employee missed a sales target, they would never be able to earn a commission in future weeks unless their sales points met and exceeded both the regular 42,000-point Gate and the added shortfall. Defendants knew this information but concealed it from each employee.

77.     Defendants intended for Plaintiffs to rely on their representations as they were required to sign paperwork subjecting themselves to the PIP system.  In doing so, they promised to pay employees a commission each week their points exceeded their Gate.  But Defendants did not inform employees that they needed to exceed their Gate, plus a shortfall, in the event that they ever failed to meet their gate in a preceding week.

78.     Plaintiffs reasonably relied on the representations of Defendants.

79.     Plaintiffs were harmed by: induced to accept sales positions with Defendants, and/or continuing working in sales positions instead of seeking employment elsewhere; deprived of thousands of dollars in monthly commissions.

80.     Plaintiffs' reasonable reliance on Defendants' misrepresentations was a substantial factor in causing the harm suffered.

### SEVENTH CAUSE OF ACTION

### FRAUD – FALSE PROMISE

### (Plaintiff against all Defendants and DOES 1-10)

81.     Plaintiffs hereby incorporate by reference, paragraphs 1 through 80, inclusive of this complaint as though fully set out herein.

82.     An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract. *Engalla v. Permanente Medical Group, Inc*. (1997) 15 Cal.4th 951, 973–974 (internal citations omitted.)

- 17 -

83.     Defendants provided each Plaintiffs with an offer letter, requiring them to sign the same, stating that the employee's compensation plan entitles them to participate in Defendants' Production Incentive Pay("PIP") plan.  This commission system states that the PIP commissions "will be paid if production points are larger than the weekly performance gate."

84.     Defendants did not intend to perform on their promises; made binding by the commission agreement.  Defendants, in fact, operated a shortfall system that punished employees that missed work, or failed to meet sales performance goals during any single week.  Specifically, employees were charged 42,000 points as a "Gate" every week.  This Gate is essentially a sales quota.  Although there were some exceptions, the employee's weekly sales quota was not typically adjusted for absences.  Employees were responsible for meeting a Gate of 42,000 points each week by producing sales sufficient to exceed this 42,000 point gate.  If the employee did not meet the Gate, they received a shortfall based on the point differential between their Gate and the actual sales points earned during the week. Unbeknownst to employees, the shortfall carried into the following week.  If an employee did not have any sales points the prior week, their new Gate for that week totaled 82,000 points. If during this new week, the employee's sales points exceeded 42,000 points, they were still barred from receiving a commission because they were still in a negative point balance due to the shortfall and new weekly Gate.  Mathematically, once an employee missed a sales target, they would never be able to earn a commission in future weeks unless their sales points met and exceeded both the regular 42,000-point Gate and the added shortfall. Defendants knew this information but concealed it from each employee.

85.     Defendants intended for Plaintiffs to rely on their promises in entering into the commission agreements and entering into and maintaining an employment relationship.

86.     Plaintiffs reasonably relied on the representation of Defendants.

87.     Defendants did not perform by failing to adhere to the terms commission agreement and failing to pay commissions earned.

88.     Plaintiffs were harmed by: induced to accept sales positions with Defendants, and/or continuing working in sales positions instead of seeking employment elsewhere; deprived of thousands of dollars in monthly commissions.

**FIRST AMENDED COMPLAINT**
Case No. 3:18-cv-01039-JSC

89.    Plaintiffs' reasonable reliance on Defendants' promises was a substantial factor in causing the harm suffered.

## EIGHTH CAUSE OF ACTION

## FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF CAL. LABOR CODE SECTIONS 1194 AND 1197

### (Plaintiffs Against All Defendants)

90.    Plaintiffs re-allege and incorporate paragraphs 1 through 89, inclusive, of this Complaint as though fully set forth herein.

91.    Plaintiffs are entitled to the applicable minimum wage for all hours worked.  Cal. Labor C. §§ 1194; 1197.

92.    Defendants failed to pay Plaintiffs the applicable minimum wage for all hours worked.  Specifically, Defendants compensated Plaintiffs only through commission.  By operation of its PIP program, Defendants deducted from commissions earned or rolled over points making it impossible for employees to earn commission under the system.  This resulted in Defendants depriving employees of their monthly commissions, the only form of wages received.  Thus, Defendants failed to pay minimum wages for all hours worked.

93.    Additionally, Defendants did not pay minimum wages for all hours worked due to off the clock work for work performed during on-call status, travel to meet with customers and/or attend events, work performed outside of scheduled work hours, and time spent taking rest periods;

94.    As a direct and proximate result of Defendant's conduct, Plaintiffs are owed unpaid wages, waiting time penalties, liquidated damages, and attorneys' fees and costs.

## NINTH CAUSE OF ACTION

## FAILURE TO PROVIDE MEAL PERIODS IN VIOLATION OF CAL. LAB. CODE SECTIONS 226.7, 512, 1198 AND APPLICABLE IWC WAGE ORDER(All Plaintiffs Against All Defendants)

95.    Plaintiffs re-allege and incorporate paragraphs 1 through 94 inclusive, of this Complaint as though fully set forth herein.

96.    Labor Code § 512(a) provides, in part, that employers, including Defendants, "may

- 19 -

not employ an employee for a work period of more than five hours per day without providing an employee with a meal period of not less than 30 minutes" and "may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes."

97.     Labor Code § 226.7 requires that employers, including Defendants, provide their employees with meal periods as mandated by the applicable Wage Order of the Industrial Welfare Commission, and prohibits employers from requiring any employee "to work during any meal … period mandated by an applicable order of the Industrial Welfare Commission."  Labor Code § 226.7(c) states, "[i]f an employer fails to provide an employee a meal … period in accordance with a state law… the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal … period is not provided."

98.     Labor Code § 1198 states that the "maximum hours of work and standard conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees.  The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."

99.     The "Meal Periods" section of the applicable IWC Wage Order states, "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee." It further states, "[a]n employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of employer and employee only if the first meal period was not waived."

100.    The "Meal Periods" section of the applicable IWC Wage Order also states, "[i]f an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided."

**FIRST AMENDED COMPLAINT**
Case No. 3:18-cv-01039-JSC

101.    On information and belief, Plaintiffs and similarly situated sales employees were subject to the same policies, practices, and procedures governing the provision and scheduling of meal periods.

102.    On information and belief, Defendants did not provide legally compliant meal breaks to its Commission-only outside sales employees who were classified as exempt.

103.    On information and belief, Defendants had a pattern and practice of not providing Plaintiffs and similarly situated employees with legally compliant 30-minute off-duty meal periods during their shifts, even though they worked more than five (5) hours during their workday.

104.    Plaintiffs and, on information and belief, Plaintiffs and similarly situated employees were unable to take compliant meal periods because they were regularly required to perform work during their meals.  Thus, as a result of Defendants' policies, Plaintiffs' and similar situated employees' meal periods were regularly short, interrupted, and/or on duty.

105.    Therefore, as a result of Defendants' conduct, including the conduct alleged herein, Defendants violated Labor Code §§ 226.7, 512, and 1198, as well as the applicable IWC Wage Order when Defendants failed to provide Plaintiffs and similarly situated employees a 30-minute, duty-free meal period before the commencement of their sixth hour of work, and a second 30-minute, duty-free meal period before the commencement of their eleventh hour of work.

106.    Consequently, pursuant to Labor Code § 226.7(b) and the "Meal Periods" section of the Wage Order, Defendants were required to pay Plaintiffs and similarly situated employees one additional hour of pay at their regular rate of compensation for each day that Defendants did not provide Plaintiffs and similarly situated employees with a 30-minute, duty-free meal period before the commencement of their sixth hour of work or a second 30-minute, duty-free meal period before the commencement of their eleventh hour of work.

107.    Despite this obligation, Defendants did not pay Plaintiffs and, on information and belief, the similarly situated employees one additional hour of pay at each employee's applicable regular rate of compensation for each day that Defendants did not provide a 30-minute, duty-free meal period before the commencement of their sixth hour of work or a second 30-minute, duty-free meal period before the commencement of their eleventh hour of work.

- 21 -

108.    Plaintiffs and the similarly situated employees suffered and continue to suffer losses related to Defendants' failure to pay an additional hour of pay for each day a legally compliant meal period was not provided and the associated use and enjoyment of compensation due and owing to them as a direct result of Defendants' Labor Code and IWC Wage Order violations.

109.    Plaintiffs seek all available remedies for Defendants' violations, including, but not limited to, all wages due, monies, and interest to the extent permitted by law.

### TENTH CAUSE OF ACTION
**FAILURE TO PROVIDE REST PERIODS IN VIOLATION OF CAL. LABOR CODE SECTIONS 226.7 AND 1198, AND APPLICABLE IWC WAGE ORDER**

(All Plaintiffs Against All Defendants)

110.    Plaintiffs re-allege and incorporate paragraphs 1 through 109 inclusive, of this Complaint as though fully set forth herein.

111.    Labor Code § 226.7 requires employers, including Defendants, to provide to their employees, including Plaintiffs, paid rest periods as mandated by the IWC Wage Orders.

112.    Labor Code § 1198 states that the "maximum hours of work and standard conditions of labor fixed by the commission shall be the maximum hours of work and the standard conditions of labor for employees.  The employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."

113.    The "Rest Periods" section of the applicable IWC Wage Order states, "[e]very employer shall authorize and permit employees to take rest periods, which insofar as practicable shall be in the middle of each work period.  The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof."  It further states, "[a]uthorized rest period time shall be counted as hours worked for which there shall be no deduction from wages." Furthermore, "[i]f an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided."

**FIRST AMENDED COMPLAINT**
Case No. 3:18-cv-01039-JSC

114.    On information and belief, Plaintiffs and similarly situated employees were subject to the same policies, practices, and procedures governing the provision and scheduling of rest periods.

115.    Plaintiffs and, on information and belief, the similarly situated sales employees, were not authorized and permitted to take compliant rest periods because Defendants either required them to perform job duties during a required duty-free rest period or failed to pay them when they took their rest breaks.

116.    Labor Code § 226.7(c) states, "[i]f an employer fails to provide an employee a … rest … period in accordance with a state law… the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the …. rest … period is not provided."

117.    Defendants did not pay Plaintiffs and similarly situated employees the appropriate rest period premium wages for each day in which Defendants did not authorize and permit Plaintiffs and the Non-Exempt Class to take compliant rest periods, in violation of Labor Code § 226.7 and the applicable IWC Wage Order.

118.    Plaintiffs and similarly situated employees suffered and continue to suffer losses related to Defendants' failure to pay an additional hour of pay for each day a rest period was not provided and the associated use and enjoyment of compensation due and owing to them as a direct result of Defendants' Labor Code and IWC Wage Order violations.

119.    Plaintiffs and similarly situated employees suffered and continue to suffer losses related to Defendants' failure to pay for rest breaks when taken by the Commission-only outside sales employees who are not paid at least minimum wage for all hours worked due to their misclassification as exempt employees.

120.    Plaintiffs seek all available remedies for Defendants' alleged violations including, but not limited to any and all wages due, monies, and interest, to the extent permitted by law.

## ELEVENTH CAUSE OF ACTION

**FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS IN VIOLATION OF CAL. LAB. CODE SECTIONS 226 AND 226.3**

**FIRST AMENDED COMPLAINT**
Case No. 3:18-cv-01039-JSC

**(All Plaintiffs Against All Defendants)**

121.    Plaintiffs re-allege and incorporate paragraphs 1 through 120 inclusive, of this Complaint as though fully set forth herein.

122.    Labor Code § 226(a) requires employers, at the time of each payment of wages, to provide each employee with an accurate wage statement itemizing, among other things, the total hours worked by the employee, the applicable hourly rate, the gross and net wages earned by the employee in the pay period, and the name and address of the legal entity that is the employer.

123.    Plaintiffs are informed, believe, and allege thereon, that during the relevant time period, Defendants have knowingly and intentionally failed to provide accurate itemized wage statements to Plaintiffs in accordance with Labor Code § 226(a).

124.    Plaintiffs are informed, believe, and allege thereon, that the wage statements Defendants provided to Plaintiffs do not accurately reflect all hours worked or the applicable wage rates paid, and by consequence the gross and net wages earned as well.

125.    As a result of this failure, Plaintiffs could not "promptly and easily" determine whether Defendants in fact paid them all wages owed.  Plaintiffs have therefore suffered injury pursuant to Labor Code § 226(e)(2)(B) as a result of Defendants' knowing and intentional failure to provide accurate itemized wage statements that comply with the requirements of Labor Code § 226(a).

126.    As a result of Defendants' acts and omissions in violation of Labor Code § 226, Defendants are liable to Plaintiffs for $50 for each initial pay period when a violation occurred and $100 for each subsequent violation up to $4,000, and reasonable attorneys' fees and costs of this suit pursuant to Labor Code § 226(e).

## TWELFTH CAUSE OF ACTION

### FAILURE TO TIMELY PAY WAGES IN VIOLATION OF LABOR CODE SECTION 204

**(All Plaintiffs Against All Defendants)**

127.    Plaintiffs re-allege and incorporate paragraphs 1 through # inclusive, of this Complaint as though fully set forth herein.

128.    Labor Code §204 provides "[a]ll wages, other than those mentioned in § 201, 201.3,

- 24 -

1    202, 204.1 or 204.2, earned by any person in any employment are due and payable twice during

2    each calendar month, on days designated in advance by the employer as the regular paydays.

3    Labor performed between the 1st and the 15th days, inclusive, of any calendar month shall be paid

4    for between the 16th and the 26th day of the month during which the labor was performed, and

5    labor performed between the 16th and the last day, inclusive, of any calendar months, shall be paid

6    for between the 1st and the 10th day of the following month."

7        129.    During the relevant time period, Defendant failed to pay Plaintiffs in a timely

8    manner all of their wages earned, in violation of Labor Code § 204.

9        130.    Pursuant to Labor Code § 218.5, in any action brought for the non-payment of

10   wages, fringe benefits, or health and welfare pension fund contributions, a prevailing plaintiff shall

11   be entitled to an award of attorney's fees and costs if requested upon the initiation of the action.

12   Plaintiffs have been denied wages and request relief.

## THIRTEENTH CAUSE OF ACTION

## FAILURE TO TIMELY PAY ALL FINAL WAGES IN VIOLATION OF CAL. LAB. CODE SECTIONS 201, 202, AND 203

## (All Plaintiffs Against All Defendants)

17       131.    Plaintiffs re-allege and incorporate paragraphs 1 through 130 inclusive, of this

18   Complaint as though fully set forth herein.

19       132.    Labor Code §§ 201 and 202 require Defendants to pay their employees all wages

20   due immediately at the time of discharge, or immediately at the time of quitting where 72 hours'

21   notice has been provided; or within 72 hours of resignation made without 72 hours' notice.

22       133.    Labor Code § 203 provides that if an employer willfully fails to pay compensation

23   promptly upon separation, as required by §§ 201 or 202, then the employer is liable for waiting

24   time penalties in the form of one day of wages for up to 30 days.

25       134.    Defendants have failed to pay all earned wages to Plaintiffs during their

26   employment with Defendants.  In addition, during the Class Period, Defendants have not paid

27   earned wages to Plaintiffs upon separation of employment, in violation of Labor Code §§ 201, 202,

28   and 203.  Defendants' conduct in this regard has been willful.

- 25 -

**FIRST AMENDED COMPLAINT**
Case No. 3:18-cv-01039-JSC

135.    As a consequence of Defendants' willful failure to pay wages due to each such employee following separation from employment as required by Labor Code §§ 201 and 202, Plaintiffs whose employment has ended during the Class Period are entitled to recover from Defendants an additional sum as a penalty, pursuant to Labor Code § 203, equal to a day's wages, for thirty (30) days, plus interest, for each employee who separated from employment with Defendants, in amounts according to proof at trial, attorneys' fees, and costs.

**FOURTEENTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAWS, CAL. BUSINESS & PROFESSIONS CODE SECTION 17200 *et seq.***

**(All Plaintiffs Against All Defendants)**

136.    Plaintiffs re-allege and incorporate paragraphs 1 through 135 inclusive, of this Complaint as though fully set forth herein.

137.    By the conduct described above, Defendants have violated the provisions of the Labor Code, and the Unfair Competition Law, codified at Business & Professions Code Sections 17200 et seq. by engaging in unfair, unlawful, and oppressive activity.

138.    The unlawful and unfair business practices conducted by Defendants are ongoing and present a threat and likelihood of continuing against Defendants' current employees. Accordingly, Plaintiffs and the Class seek preliminary and permanent injunctive relief.

139.    Defendants generated income and reduced its employee costs as a direct result of the above-mentioned unlawful and unfair business practices.  Plaintiff and the Class are therefore entitled to restitution of any and all monies received by Defendants, and each of them, while engaged in such practices.

140.    As a result, Plaintiffs and the Class are entitled to restitution of their unpaid commissions, costs, and expenses in addition to interest, penalties, reasonable attorney's fees and costs.

**FIFTEENTH CAUSE OF ACTION**

**VIOLATION OF THE PRIVATE ATTORNEYS GENERAL ACT, CAL. LAB. CODE SECTION 2698 *et seq.***

- 26 -

**(All Plaintiffs Against All Defendants)**

141.    Plaintiffs re-allege and incorporate paragraphs 1 through # inclusive, of this Complaint as though fully set forth herein.

142.    On a representative and/or a class action basis, Plaintiffs seek recovery of penalties under the Private Attorneys General Act of 2004 ("PAGA"), Labor Code §§ 2698 et seq.

143.    PAGA permits an "aggrieved employee" to recover penalties on behalf of him or herself and other current or former employees as a result of an employer's violations of the Labor Code, including but not limited to violations alleged herein, including Labor Code §§ 201-204, 221, 223, 224, 226, 226.3, 226.7, 510, 512, 1174, 1194, 1197, and 2802.

144.    PAGA provides for enforcement of the penalty provisions of Labor Code § 558. Section 558 authorizes recovery of civil penalties against the employer and persons who acted on behalf of the employer or who have caused the employer to violate any provisions regulating hours and days of work in any Wage Order.

145.    Plaintiffs are aggrieved employees because they were employed by the alleged violators and the alleged violations were committed against them.

146.    Plaintiffs complied with the PAGA notice provision set forth in Labor Code § 2699.3(a)(1) by providing written notice through online filing to the Labor and Workforce Development Agency ("LWDA"), and by certified mail to Defendants.  Plaintiffs' written notice included reference to specific provisions of the Labor Code alleged to have been violated, including the facts and theories to support the alleged violations.  Plaintiffs' written notice was accompanied by a filing fee of seventy-five dollars ($75) as required by the statute.

147.    Plaintiffs received notice from the LWDA of its intent not to investigate the Labor Code violations identified in the notice submitted by Plaintiffs.  Pursuant to Labor Code § 2699.3(a)(2), upon receipt of that notice Plaintiffs may commence a civil action pursuant to Labor Code § 2699.

148.    Plaintiffs request civil penalties against Defendants for their violations of the Labor Code, as provided under Labor Code § 558 and § 2699(f), plus attorneys' fees and costs, in amounts to be proven at trial.

- 27 -

1

**PRAYER FOR RELIEF**

2

WHEREFORE, Plaintiffs, individually and on behalf of all Class members and/or other

3

persons similarly situated, respectfully prays for judgment against Defendants, and each of them,

4

according to proof, as follows:

5

    a.   An order that the action be certified as a class action;

6

    b.   An order that Plaintiffs be appointed class representatives;

7

    c.   An order that counsel for Plaintiffs be appointed class counsel;

8

    d.   For unpaid wages, reimbursements, and all compensation due;

9

    e.   For an award of an additional hour of pay at the regular rate of compensation for each

10

         noncompliant meal and rest period, pursuant to Labor Code § 226.7 and the applicable

11

         Order of the Industrial Welfare Commission;

12

    f.   For unpaid costs and expenses, according to proof;

13

    g.   For restitution of unpaid costs and expenses pursuant to Business & Professions Code

14

         Sections 17200 *et seq.*;

15

    h.   For prejudgment and post-judgment interest at the maximum legal rate;

16

    i.   For liquidated damages;

17

    j.   For statutory penalties and damages, where applicable, according to proof;

18

    k.   For civil penalties under Labor Code § 2699(a);

19

    l.   For attorney's fees authorized by statute;

20

    m.  For costs of suit incurred herein; and

21

    n.   For such other and further relief as the Court may deem just and proper.

22

23

Dated:  October 29, 2019               **Benjamin Law Group, P.C.**

24

25

                                   _____

26

                                     Na'il Benjamin
                                   Attorneys for Plaintiffs

27

28

- 28 -

**FIRST AMENDED COMPLAINT**
Case No. 3:18-cv-01039-JSC

1

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all others similarly situated, hereby requests a jury
2  trial on the claims so triable.

3

4  Dated:  October 29, 2019                           **Benjamin Law Group, P.C.**

5

By  _____
6                                                   **NA'IL BENJAMIN**
7                                                   Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST AMENDED COMPLAINT**
Case No. 3:18-cv-01039-JSC