1  BENJAMIN LAW GROUP, P.C.
NA'IL BENJAMIN, ESQ. (SBN 240354)
2  ALLYSSA VILLANUEVA (SBN 312935)
1290 B STREET, SUITE 314
3  HAYWARD, CA 94541
Telephone: (510) 897-9967
4  Facsimile:  (510) 439-2632
nbenjmin@benjaminlawgroup.com
5  allyssa@benjaminlawgroup.com

6  Attorneys for Plaintiffs
WILLIAM USCHOLD, TIANA NAPLES,
7  JOSE ALMENDAREZ, and TYRONE DANGERFIELD
On behalf of themselves and others similarly situated
8

9                 **UNITED STATES DISTRICT COURT**

10               **NORTHERN DISTRICT OF CALIFORNIA**

11

12  WILLIAM USCHOLD , TIANA NAPLES,        Case No. 3:18-cv-01039-JSC
13  JOSE ALMENDAREZ, and TYRONE
DANGERFIELD, each on behalf of themselves
14  and others similarly situated,              **NOTICE OF MOTION;**
                                            **MEMORANDUM OF POINTS AND**
15                Plaintiffs,               **AUTHORITIES IN SUPPORT OF**
                                            **MOTION FOR ATTORNEYS' FEES,**
16        v.                                **LITIGATION COSTS, AND CLASS**
                                            **REPRESENTATIVE INCENTIVE**
17                                          **AWARDS**

18                                          **[Declarations of Allyssa Villanueva and**
                                            **Na'il Benjamin, and Proposed Order filed**
19  NORTHSTAR MEMORIAL GROUP, et al.,        **concurrently herewith]**

20                Defendants.
                                            **Date: February 20, 2020**
21                                          **Time: 9:00am**
                                            **Courtroom: TBD**
22                                          **Hon. Jacqueline Scott Corley**

23

24

25        PLEASE TAKE NOTICE that on February 20, 2020, at 9:00am, or as soon thereafter as

26  the matter may be heard, in the above-entitled Court, Plaintiffs WILLIAM USCHOLD, TIANA

27  NAPLES, JOSE ALMENDAREZ, and TYRONE DANGERFIELD (hereinafter "Plaintiffs") will

28  and hereby do move this Court for an order granting: $ 550,000.00 in attorneys' fees to Counsel;

1   $12,431.44 in litigation costs to Counsel; and $8,000.00 in incentive awards to be distributed to the

2   four (4) named Plaintiffs each in the amount of $2,000.00.

3          This Motion is brought pursuant to the parties' Settlement Agreement; this Court's Order

4   Granting Preliminary Approval of the Class Settlement Agreement and directing Plaintiffs to file

5   the present Motion no later than November 4, 2019; and the Northern District's Procedural

6   Guidance for Class Action Settlements.

7          This Motion is based upon this Notice, the Memorandum of Points and Authorities

8   included herewith; the Declarations of Allyssa Villanueva and Na'il Benjamin filed concurrently

9   herewith; the Motion for Preliminary Approval of the Class Settlement Agreement and

10  supporting documents; all other pleadings and records on file in this action; and any other

11  information presented at or before the hearing on this matter including the Motion for Final

12  Approval of the Class Settlement Agreement and all supporting documents.  Pursuant to the

13  Procedural Guidance, "Final Approval"  ¶ 2, no statement of facts and case history is included in

14  the below Memorandum of Points and Authorities.

15         The basis for this Motion is that the proposed attorneys' fee award, costs of litigation, and

16  class representative incentive awards are fair, adequate, and reasonable given that the parties

17  have reached a Settlement Agreement which is in the best interests of the Class as a whole.

18

19  Dated:  November 4, 2019                    Respectfully submitted,

20

21                                             BENJAMIN LAW GROUP, PC.

22

23                                             By

24                                               NA'IL BENJAMIN, ESQ.
                                                 Attorney for Plaintiffs
25                                               WILLIAM USCHOLD, TIANA
                                                 NAPLES, JOSE ALMENDAREZ and
26                                               TYRONE DANGERFIELD

27

28

# **TABLE OF CONTENTS**

**Page(s)**

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

II.     ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

    a. The Requested Fee Award is Reasonable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

        i. Counsel Achieved Exceptional Results in the Case . . . . . . . . . . . . . . . . . . . . . .   6

        ii. The Litigation Required Complex Legal Skill and Quality Work. . . . . . . . . . . . .   7

        iii. The Settlement Benefits Outweigh the Risk of Litigation in the Class. . . . . . . .   9

        iv. Counsel Represented Plaintiffs on a Contingent Basis. . . . . . . . . . . . . . . . . . .  10

        v. Awards in Similar Cases Supports that the Requested Fee is Reasonable. . . . . .  10

        vi. The Requested Award is Reasonable When Compared to the Lodestar. . . . . . .  11

    b. The Requested Litigation Costs Are Reasonable. . . . . . . . . . . . . . . . . . . . . . . . . . .  12

    c. The Requested Incentive Awards are Reasonable. . . . . . . . . . . . . . . . . . . . . . . . . .  12

III.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

1

2 <u>**TABLE OF AUTHORITIES**</u>

3 <u>**Federal Cases**</u>                                                          **Page(s)**

4 *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

5 *Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (C.D. Cal. 1979) . . . . . . . . . . . . . . . . . . . . . .   6

6 *Corson v. Toyota Motor Sales U.S.A., Inc.*, No. CV 12-8499,

7     2016 U.S. Dist. LEXIS 46757 (C.D. Cal. Apr. 4, 2016). . . . . . . . . . . . . . . . . . .   11

8 *Glass v. UBS Financial Services, Inc.*, No. C-06-4068 MMC

9     2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007). . . . . . . . . . . . . . . . . . .   12

10 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . .   9, 11

11 *Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

12 *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786,

13     2013 U.S. Dist. LEXIS 16939 (N.D. Cal. Feb. 6, 2013). . . . . . . . . . . . . . . . . . .   11

14 *In re Activision Sec. Litigation*, 723 F. Supp. 1373 (N.D. Cal. 1989). . . . . . . . . . . . . .   3

15 *In re Global Crossing Securities and ERISA Litigation,*

16     225 F.R.D. 436 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

17 *In re Heritage Bond Litigation*, Case No.: 02-ML-1475 DT,

18     2005 U.S. Dist. LEXIS 13555 (C.D. Cal. July 10, 2005). . . . . . . . . . . . . . . . . . .   12

19 *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036 (N.D. Cal. 2008). . . . . . . . . . . . .   3, 4, 6

20 *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015). . . . . . . . . . . .   4

21 *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,

22     991 F.Supp.2d 437(E.D.N.Y. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

23 *In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) . . .   3

24 *McLeod v. Bank of Am., N.A.,* Case No. 16-cv-03294-EMC,

25     2019 U.S. Dist. LEXIS 40869 (March 13, 2019). . . . . . . . . . . . . . . . . . . . . . . . .   3

26 *O'Connor v. Uber Techs., Inc.*, Case No. 13-cv-03826-EMC,

27     2019 U.S. Dist. LEXIS 157070 (N.D. Cal. Sept. 13, 2019). . . . . . . . . . . . . . . . .   3

28

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989). . . . . . . . . . . . . . . .   4

*Roberts v. Marshalls of CA, LLC*, Case No. 13-cv-04731-MEJ,

     2017 U.S. Dist. LEXIS 45944 (N.D. Cal. March 28, 201). . . . . . . . . . . . . . . . . . . . .   10

*Rubenstein v. Neiman Marcus Grp. LLC*, Case No.: 2:14-CV-07155-SJO-JPR

     2018 U.S. Dist. LEXIS 178720 (C.D. Cal. Oct. 1, 2018). . . . . . . . . . . . . . . . . . . . .   3, 4

*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1999). . . . . . . .   3

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) . . . . . . . . . . . . . . .   12

*Vizcaino v. Microsoft Corp.,* 290 F.3d 1043 (9th Cir. 2002). . . . . . . . . . . . . . . . .   3, 6, 10, 11

*Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482 (E.D. Cal. 2010). . . . . . . . . . . .   10

*Williams v. MGM-Pathe Communications Co.,* 129 F.3d 1026 (9th Cir. 1997). . . . . . . .   10

*Wilson v. TE Connectivity Networks, Inc.,*  Case No.14-cv-04872-EDL,

     2019 U.S. Dist. LEXIS 152431 (N.D. Cal. Sept. 6, 2019). . . . . . . . . . . . . . . . . . . . .   3

## State Cases

*Ketchum v. Moses*, 24 Cal.4th 1122 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

*Serrano v. Unruh*, 32 Cal.3d 621 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5, 10

## Statutes

*Cal. Lab Code* , Section 218 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

*Cal. Lab Code* , Section 226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

*Cal. Lab Code* , Section 1194 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

*Cal. Lab Code* , Section 2699 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

1

<strong><u>MEMORANDUM OF POINTS AND AUTHORITIES</u></strong>

2

**I.    INTRODUCTION**

3    Individual and representative Plaintiffs, TYRONE DANGERFIELD, WILLIAM

4    USCHOLD, TIANA NAPLES, and JOSE ALMENDAREZ (collectively "Plaintiffs") bring this

5    class and representative action on behalf of themselves and all of the commissioned employees

6    ("Employees") employed by Defendants NSMG SHARED SERVICES, LLC and DOES 1-50,

7    inclusive, from the date four years prior to filing this Complaint through the date of trial in this

8    action.  Plaintiffs' action seeks unpaid wages, reimbursement for necessary and reasonable

9    business expenses, statutory penalties, injunctive relief, attorneys' fees and costs, prejudgment

10    interest, and other relief the court may deem appropriate.

11    The parties reached a settlement and this Court granted preliminary approval of the

12    settlement agreement.  The preliminarily approved Settlement Agreement and Class Notice

13    provided for "[n]o more than $732,600 to Class Counsel for attorneys' fees and $20,000 in

14    costs" and $2,000.00 in incentive awards for "each named Plaintiff."  (Motion for Preliminary

15    Approval [ECF No. 42] at 3:17-24).

16    In compensation for their work, and in recognition of the risks they faced and the

17    significant investment they made, Plaintiffs seek an award of $550,000.00 in fees incurred by

18    Plaintiffs' Counsel (hereinafter "Counsel") – a figure that is 25 % of the $2.2 million settlement

19    fund.  This is a reasonable figure under each factor the Court may consider and does not include

20    the remaining work Counsel must undertake to secure final approval and oversee the claims

21    process.  Plaintiffs also seek $12,431.44 in costs incurred in litigating this action.  Plaintiffs also

22    seek an order approving incentive awards of $2,000.00 per named Plaintiff for a total of

23    $8,000.00 in incentive awards; also specified in the preliminarily approved Settlement

24    Agreement.  The hearing on this Motion is set for the same date and time as the final settlement

25    approval hearing.

26    ///

27    ///

28    ///

## II.   ARGUMENTS

### a.   <u>The Requested Fee Award is Reasonable.</u>

Plaintiffs seek an award of 25% of the Gross Settlement Amount ($550,000.00) as attorneys' fees for its Counsel's work and investments into this litigation.

Plaintiffs request fees for its attorneys' work and investments into this litigation on their behalf, as well as the sacrifices and lost opportunities resulting in counsel staffing a class action matter as a small law firm.  Plaintiffs' action includes wage claims, and other claims pursuant to the California Labor Code.  Each of these claims include fee-shifting provisions applicable here. *See* Cal. Lab. Code §§ 285, 226, 1194, and 2699.  Plaintiffs' request is both fair and reasonable because Plaintiffs' counsel took on 100% of the risk of losing and recovering nothing, without any pay or compensation, and paid all costs on Plaintiffs' behalf, for approximately two years.

During this two-year period, Plaintiffs' counsel paid at least three employee-attorneys whom were staffed on this matter at various times during its pendency.  Declaration of Na'il Benjamin (hereinafter "Benjamin Declaration") ¶ 21.  Due to Plaintiffs' counsel's limited resources as a small law firm, counsel was unable to take other matters during this time. *Id*. Instead, Plaintiffs' counsel invested their passion, experience, and skill into this matter on behalf of Plaintiffs and obtained an extraordinary result for each class member when compared to similar matters in this District.  Moreover, Plaintiffs' counsel was able to obtain this result without the continued risk of trial, complex motion practice, and additional risk to the class.

In any case, Defendant does not (and will not) oppose an award of attorneys' fees for Class Counsel not to exceed one-third (1/3), or $736,200.00,  of the GSA.  Settlement Agreement ¶ 59.

The common fund doctrine is an equitable exception to the American rule that litigants must bear their own attorneys' fees. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Under the doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Id*.  The doctrine supports the public policy that: "[T]hose who benefit from the

1   creation of the fund should share the wealth with the lawyers whose skill and effort helped create

2   it." *In re Washington Public Power Supply Sys. Sec. Litig*., 19 F.3d 1291, 1300 (9th Cir. 1994).

3        In common fund cases, the district court has discretion to employ either the lodestar

4   method or the percentage-of-recovery method in determining reasonable attorneys' fees.

5   *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (9th Cir. 2002).  Although courts may use

6   either method, "the percentage method in common fund cases appears to be dominant." *In re*

7   *Omnivision Techs., Inc.,* 559 F.Supp. 2d 1036, 1046 (N.D. Cal. 2008); *see also O'Connor v.*

8   *Uber Techs., Inc.*, Case No. 13-cv-03826-EMC, 2019 U.S. Dist. LEXIS 157070 at *27-31 (N.D.

9   Cal. Sept. 13, 2019);  *Wilson v. TE Connectivity Networks, Inc.,* Case No.14-cv-04872-EDL,

10  2019 U.S. Dist. LEXIS 152431 at *18-23 (N.D. Cal. Sept. 6, 2019); McLeod v. Bank of Am.,

11  N.A., Case No. 16-cv-03294-EMC, 2019 U.S. Dist. LEXIS 40869 at *17-21 (March 13, 2019)

12  *Rubenstein v. Neiman Marcus Grp. LLC*, 2018 U.S. Dist. LEXIS 178720 at *4 (C.D. Cal. Oct. 1,

13  2018) (finding that "83% of cases employed the percentage-of-the-recovery method" and that the

14  lodestar should only be used when circumstances make it difficult to ascertain the common fund

15  amount).  The percentage method "better aligns the incentives of plaintiffs' counsel with those of

16  the class members because it bases the attorneys' fees on the results they achieve for their

17  clients."  *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig*., 991

18  F.Supp.2d 437, 440 (E.D.N.Y. 2014).

19       The percentage method has also been deemed the superior method of awarding fees,

20  particularly where fee motions in class settlements are unopposed and save extensive judicial

21  time that would normally be required to review billing and rates under the lodestar method.  *See*

22  *In re Activision Sec. Litigation*, 723 F. Supp. 1373 (N.D. Cal. 1989) (collecting cases); *Six (6)*

23  *Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1999) (the benchmark

24  percentage method should only be "replaced by a lodestar calculation, when special

25  circumstances indicate that the percentage recovery would be either too small or too large in

26  light of the hours devoted to the case or other relevant factor"); *see also Court Awarded Attorney*

27  *Fees*, Report of the Third Circuit Task Force, 108 F.R.D. 237, 254-59 (1985) (recommending

28  that all courts in the Third Circuit use the percentage method).  The percentage method has also

1   been preferred over the lodestar method because the lodestar method can have a deterrent effects

2   on attorneys litigating representative actions. *Rubenstein v. Neiman Marcus Grp. LLC*, Case

3   No.: 2:14-CV-07155-SJO-JPR, 2018 U.S. Dist. LEXIS 178720 at *4 (C.D. Cal. Oct. 1, 2018)

4   (collecting cases).

5        The Ninth Circuit recognizes 25% of the common fund as a "benchmark," which can be

6   adjusted upward or downward based on the circumstances of the case. *Paul, Johnson, Alston &*

7   *Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). "[I]n most common fund cases, the award

8   exceeds that benchmark." *Omnivision Techs., Inc*., 559 F. Supp.2d at 1047. The Ninth Circuit

9   encourages courts to cross-check their chosen method of calculating fees against the other

10   method. *In re Online DVD-Rental Antitrust Litig*., 779 F.3d 934, 949 (9th Cir. 2015).

11        Here, the Settlement Agreement permits Counsel to seek up to one third (1/3) of the Net

12   Settlement Fund or $736,200.00 in attorneys' fees. Settlement  Agreement ¶ 59. Plaintiffs seek

13   fees in the amount of 25% or $550,000.00 which is within the standard range.

14        As described in detail in Counsel's declarations, Counsel spent extensive time engaging

15   in discovery and negotiation to reach settlement. Benjamin Decl.  ¶¶ 14-26. As a class case,

16   discovery included requests and documents concerning individual Plaintiffs and putative class

17   members. *Id*. Lead and support counsel reviewed hundreds of pages of Defendant's employment

18   records to assess the class size and strength of the class allegations on each claim. *Id*. at ¶¶ 14 and

19   16. Counsel also conducted witness interviews as a part of the discovery process. *Id.* Lead

20   Counsel spent dozens of hours reviewing such materials in preparation for the first private

21   mediation session which took place on October 24, 2018. *Id.* at ¶¶ 14-15.

22        After the first mediation was unsuccessful, Lead Counsel then engaged in extensive meet

23   and confer negotiations over months. Benjamin Decl. ¶ 16. Through the continued meet and

24   confer, the parties were able to agree to a second mediation. *Id*. at ¶ 17. The parties also

25   exchanged further discovery, informally, requiring Counsel expend further time to review and

26   assess the evidence and Plaintiffs' position on settlement. *Id*. at ¶ 18.

27        Lead Counsel then prepared for, and attended, another private mediation. Benjamin

28   Decl. ¶ 18. Though the second mediation was unsuccessful, Lead Counsel diligently pursued

1    alternative resolution until an agreement was ultimately reached in March 2019. *Id*. at ¶ 18.

2    Once an agreement was reached, Counsel has expended necessary time to obtain approval of the

3    agreement from this Court. *Id.* at ¶ 19.  As the Motion for Preliminary Approval was prepared

4    and submitted joint with defense counsel, Counsel required extensive time to meet and confer

5    with opposing counsel on the various drafts of the Motion and even obtained an additional

6    month's time to file the Motion. *Id*. at ¶ 22; Declaration of Allyssa Villanueva (hereinafter

7    "Villanueva Declaration") ¶ 9. Counsel's request for fees includes time spent attending mediation

8    and conducting discovery as well as informal discovery.  Benjamin Decl. ¶¶ 14-18.  Counsel's

9    request also includes time reasonably expended in preparing the Motion for Preliminary Approval

10   of the Class Settlement and attending the hearing on the Motion; preparing the Amended Motion

11   for Preliminary Approval of the Class Settlement and attending the hearing; and working with the

12   settlement administrator.  *Id*. at ¶ 22; Villanueva Decl. ¶ 9.   In addition, Counsel reasonably

13   spent time in preparing this Motion and will incur additional fees in preparing the Motion for

14   Final Approval of the Class Settlement.  *Id*. at ¶ 22; Villanueva Decl. ¶ 9; *see Serrano v. Unruh*

15   (1982) 32 Cal.3d 621, 639 (attorneys' fees "ordinarily include compensation for all hours

16   reasonably spent, including those necessary to establish and defend the fee claim").

17        Attorney Villanueva entered time on a bi-weekly basis and reviewed time entries to

18   ensure fairness and accuracy.  Villanueva Decl. ¶¶ 9-10.  Counsel took measures to litigate this

19   case efficiently including by informal exchange of documents and interviews of each Plaintiff in

20   the presence of defense counsel.  Benjamin Decl. ¶ 23.  Lead Counsel played a very direct and

21   hands-on role in discovery, fact development, and assessment of the legal claims on a class basis

22   and individual basis.  *Id*. at ¶¶ 14-26.

23        Plaintiffs' counsel billed at its standard rates of $375.00 per hour for attorney Villanueva

24   and $475.00 per hour for Lead Counsel Benjamin.  Villanueva Decl. ¶ 7; Benjamin Decl. ¶ 20.

25   These are reasonable rates based on Counsel's experience and skill.  *See* Benjamin Decl. ¶¶  2-13;

26   Villanueva Decl. ¶¶ 2-6.  Attorneys Thomas and Hawes were also staffed on this matter but their

27   time was not captured and entered into the firm's billing system because those attorneys were

28   staffed exclusively on contingency fee matters.  Benjamin Decl. ¶ 22. Thus, the lodestar reflects

5

1    only those hours contemporaneously captured, or otherwise entered into the billing system and

2    reviewed and approved by Lead Counsel Benjamin.  *Id.*

3         Regardless of the chosen method, courts must award attorneys' fees based on an

4    evaluation of "all of the circumstances of the case."  *Vizcaino*, 290 F.3d at 1048.  The Ninth

5    Circuit has identified the following non-exhaustive factors as being relevant to that evaluation:

6    (1) the results achieved for the class; (2) the skill required of counsel and the quality of the work;

7    (3) the risk of the litigation; (4) the contingent nature of the fee and the financial burden on

8    counsel; and (5) awards in similar cases.  *Id*. at 1048-50.

9         All of these factors support the requested fee award here.  However, factors 3 and 4 are

10   the most relevant in the inquiry.  *See Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1138–1139

11   (citation omitted).

12                    **i.  Counsel Achieved Exceptional Results for the Class**

13        The parties' Agreement provides for a Settlement Fund of $2.2 Million.  Mot. at 4:13-14.

14   Plaintiffs contend that the global exposure created by the evidence developed to date in the range

15   of $9 Million and $15 Million dollars excluding attorneys' fees and costs.  Mot. at 20:26-21:3.

16   The gross settlement amount is approximately 13% to 22% of that exposure, which is more than

17   reasonable given the risks involved in this case.  *Id*. at 21:1-3; *Boyd v. Bechtel Corp.*, 485 F.

18   Supp. 610, 618 (C.D. Cal. 1979) ("simply because a settlement may amount to only a fraction of

19   the potential recovery does not in itself render it unfair or inadequate.  Compromise is the very

20   nature of settlement.").

21        Plaintiffs agreed to resolve this action for $2.2 Million.  The amount accepted is fair and

22   reasonable.  *See*, *e.g., Omnivision Techs., Inc.*, 559 F. Supp.2d at 1047; *In re IKON Office

23   Solutions*194 F.R.D. 166, 183-84 (E.D. Pa. 2000) (approving settlement totaling $116 million

24   although plaintiffs estimated their claims to be worth more than $1 billion dollars, or about

25   11.6% of the requested amount for damages); *In re Global Crossing Securities and ERISA

26   Litigation* 225 F.R.D. 436, 460 (S.D.N.Y. 2004) (approving partial settlement of $325 million,

27   far below the "tens of billions" estimated in damages by the plaintiffs).  In this case, Plaintiffs

28   considers the settlement to be significantly more than a "fraction," particularly considering the

1   various potential complications, risks, and expense that proceeding would entail.  Based on the

2   numerous risks in continuing with litigation, which are detailed further below and in Plaintiffs'

3   preliminary approval Motion, Plaintiffs and Counsel chose to obtain for the Class a certain award

4   of significant value when compared to the value of the overtime claims and risk in proceeding

5   with litigation.

6       The Parties acknowledge that the facts of this case are disputed.  *See* Amended Motion

7   for Preliminary Class Settlement Approval [ECF No. 48].

8       Through discovery, Counsel assessed the risk of some claims being excluded from the

9   class analysis on the basis that individualized inquiries were predominant.  Benjamin Decl. ¶ 25.

10  Counsel also evaluated the extent to which Defendant complied with California law for at least

11  certain time periods within the Class period and with certain putative Class members.  *Id*.  These

12  issues presented questions regarding the class period, and scope of damages during the class

13  period.  *Id*.  There are significant legal uncertainties associated with Plaintiffs' meal period and

14  off-the-clock claims as well as the prayer for punitive damages for "willful" violations and

15  Defendant vigorously contested liability and would have presented several significant defenses

16  to such claims.  *Id*.

17      Based on some of these uncertainties, Plaintiffs' Counsel believed that the agreed-upon

18  settlement fairly compensates the Class Members for wages and penalties allegedly owed.

19  Benjamin Decl. ¶ 25.  The uncertainty of the outcome of a class certification motion and trial

20  places both parties in a position of significant risk including extreme expenditures in time and

21  money.  *Id*.

22      Through Counsel's work, risks, and investment, Plaintiffs were able to assess the above

23  risks and other factors to achieve an exceptional result for the Class by reaching an agreement

24  that provides for payment of lost wages, interest, and penalties to each Class member.

25              **ii.   The Litigation Required Complex Legal Skill and Quality Work**

26      The Proposed Settlement presented to the Court for preliminary approval is the result of

27  two years of contentious litigation, discovery and negotiations between skilled and experienced

28  attorneys.  These attorneys also engaged a highly skilled and experienced mediator with

1    substantial class action litigation and trial experience.  This settlement was reached after two

2    failed private mediations, and after extensive continued negotiations.

3         Counsel are experienced attorneys and skilled in employee representation.  Benjamin

4    Decl. ¶¶ 2-13; Villanueva Decl. ¶¶ 2-6. Counsel vigorously debated the proper application of the

5    law and the uncertainties posed by unsettled questions at issue in this litigation, such as the

6    legality and consistency of Defendant's branch opening and closing procedures, the actual effect

7    of Defendant's meal period policies, the applicability of the outside sales exemption, whether

8    Defendant's conduct was willful for purposes of Labor Code Sections 203 and 226, and whether

9    certain claims could be certified on a class-wide basis given the individualized issues that may

10   need to be analyzed to determine liability on each claim.  Benjamin Decl. ¶ 25.

11        Unlike the standard wage and hour class action where a large number of employees fit

12   into the same basic category, this case involved numerous complex and potentially competing

13   employment issues including, but not limited to, misclassification issues (exempt v. non-

14   exempt); more than a dozen different employment locations with different managers and

15   supervisors, as well as differing compensation systems and methods throughout the Class Period.

16   *See* Amended Motion for Preliminary Class Settlement Approval at 9:18-11:15.

17        Counsel engaged in extensive discovery and document review of Defendant's employee

18   records to determine class size and sampling of claims within the putative class.  See Benjamin

19   Decl. ¶¶ 14-25.  The parties negotiated in good faith based on the evidence developed and the

20   legal disputes including participation in two private mediation sessions.  *Id.*  Furthermore, the

21   parties' Settlement Agreement included allowing Plaintiffs to file an amended Complaint which

22   perfected some of the allegations and added additional class representatives.  See First Amended

23   Complaint [ECF No. 55].

24        The settlement was reached only after extensive discovery and investigation, arms' length

25   negotiation and bargaining, mediation before a respected and experienced mediator, and after

26   completion of investigation and discovery sufficient to allow counsel and the Court to act

27   intelligently.

28

### iii.   The Settlement Benefits Outweigh the Risks of Litigation to the Class

When considering the fairness of settlement, courts consider the strength of a plaintiffs' case as well as the risk, expense, complexity and likely duration of further litigation.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  The Proposed Settlement is fair, reasonable and adequate given the inherent risks of litigation, the risks regarding class certification, and the expense and time consumed by litigation.

The Parties acknowledge that the facts of this case are disputed and there are significant legal uncertainties associated with some of Plaintiffs' claims.  Benjamin Decl. ¶ 25.  Defendant vigorously contested liability and would have presented several significant defenses to such claims.  *Id*.  Through discovery, Counsel assessed that some claims appeared to need individualized inquiry giving Defendant a strong opposition to class certification on such claims.  Evidence also proved that Defendant was compliant for at least certain time periods within the Class period and with certain putative Class members thereby abridging the scope and duration of some of Plaintiffs' claims.  *Id*.

In the face of these and other uncertainties, Plaintiffs' Counsel believed that the agreed-upon settlement fairly compensates the Class Members for wages and penalties allegedly owed.  *Id*.  The uncertainty of the outcome of a class certification motion and trial here places both parties in a position of significant risk including extreme expenditures in time and money.  *Id*.  If this case were certified, it would then need to proceed to trial.  In a case of this size, post-trial and appellate proceedings would be likely to occur, which would surely drag the case even further into the future creating further risk, expense, and uncertainty.

Counsel already spent almost two years litigating this matter; including witness interviews, extensive informal discovery, and two private mediations.  Based on Counsel's assessment of the risks of continuing to litigate, the parties' reached a fair and reasonable settlement at an early juncture in the case.

///

///

1

#### iv.  Counsel Represented Plaintiffs on a Contingency Basis.

2         In *Serrano v. Unruh* ("Serrano IV") (1982) 32 Cal.3d 621, the California  Supreme

3   Court explained that awarding full compensation to contingency-paid counsel is so essential

4   to the public interest. *Id.* at 635.  "It is an established practice in the private legal market to

5   reward attorneys for taking the risk of non-payment by paying them a premium over their

6   normal hourly rates for winning contingency cases." *In re : Wash. Pub. Power Supply Sys.*

7   *Secs. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) (remanding to district court for failure to

8   award risk multiplier to fee award) (citation omitted).

9         Here, Counsel represented Plaintiffs on a contingency fee basis fronting all costs and

10  fees relating to the litigation.  Villanueva Decl. ¶ 8.  Counsel's standard contingency fee

11  percentage is 40%.  *Id.*  Thus, this factor favors an award of the full contingency fee award

12  requested.

13
#### v.  Awards in Similar Cases Support that the Requested Fee is Reasonable

14        The Agreement provides for up to 33 1/3% of the GSA in attorney fees, and for

15  reimbursement of actual litigation costs.  Settlement Agreement ¶ 59.  These provisions are fair,

16  adequate, and reasonable, and fall within the range of reasonable fees in the Ninth Circuit.

17        It is well settled that "the primary basis of the fee award remains the percentage method,"

18  and 30% is within the established reasonable range for common-fund cases.  *Vizcaino v.*

19  *Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir.2002); *see, e.g., Vasquez v. Coast Valley Roofing,*

20  *Inc.,* 266 F.R.D. 482, 491 (E.D. Cal. 2010) ("[t]he typical range of acceptable attorneys' fees in

21  the Ninth Circuit is 20% to 33 1/3% of the total settlement value"); *Williams v. MGM-Pathe*

22  *Communications Co.,* 129 F.3d 1026, 1027 (9th Cir. 1997) (attorney fee award of 33.3% based

23  on maximum settlement value in a claims-made settlement).  This is evermore true in wage and

24  hour class action cases; *Roberts v. Marshalls of CA, LLC*, Case No. 13-cv-04731-MEJ, 2017

25  U.S. Dist. LEXIS 45944 at *34-35 (N.D. Cal. March 28, 201) (collecting cases).

26  ///

27  ///

28

1

**vi.   The Requested Fee is Reasonable When Compared to the Lodestar**

2      The Ninth Circuit encourages a rough calculation of the lodestar as a cross-check to

3   assess the reasonableness of an award that is principally calculated using the percentage method.

4   *Vizcaino*, 290 F.3d at 1050.  A lodestar "may be adjusted upward or downward to account for

5   several factors including the quality of the representation, the benefit obtained for the class, the

6   complexity and novelty of the issues presented, and the risk of nonpayment."  *Hanlon,* F.3d at

7   1029.

8      The currently calculable lodestar for work on this case through November 4, 2019 is

9   $70,693.75, representing 159.75 hours of attorney time, and not including the additional time that

10   Counsel will necessarily spend obtaining final approval of the settlement and overseeing the

11   claims process.  Benjamin Decl. ¶¶ 22, 27, Ex. A.  This includes over 35 hours expended by

12   Attorney Villanueva.  *Id*.; Villanueva Decl. ¶ 9, Ex. A.  This lodestar does not reflect all of the

13   time all four attorneys staffed on this matter have invested in this case because counsel would

14   need to reconstruct time for three attorneys that work primarily on contingency fee matters.  *Id*.

15   Benjamin Decl. ¶ 22.  These attorneys did not contemporaneously capture and bill all time

16   worked on this matter, so reconstructing that time would require a substantial amount of time and

17   resources by counsel, and require substantial time from the Court for the Court's review.  *Id.*

18      Counsel's total fee amount is reasonable under all factors considered in the percentage

19   method, thus, the fee award should be granted in the amount of $550,000.00.

20

**b.   The Requested Litigation Costs Are Reasonable.**

21      Counsel seeks an award of $12,431.44 for the costs it expended in this litigation.  This

22   request is reasonable as it represents counsel's costs expended over almost two years of litigation

23   including witness interviews, extensive informal discovery, and two private mediations.

24      Under the common fund doctrine, attorneys who generate a benefit for the class are

25   entitled to the reimbursement of reasonable litigation expenses incurred in prosecuting the

26   litigation.  *See Corson v. Toyota Motor Sales U.S.A., Inc*., No. CV 12-8499, 2016 U.S. Dist.

27   LEXIS 46757at *14-15 (C.D. Cal. Apr. 4, 2016) (citations omitted) ("Expenses such as

28   reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer

legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable"); *Hopkins v. Stryker Sales Corp*., No. 11-CV-02786, 2013 U.S. Dist. LEXIS 16939, at *17-18 (N.D. Cal. Feb. 6, 2013) (awarding costs for document review, depositions, and experts).  In general, attorneys in class action cases are entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotations omitted).

Included with the Villanueva Declaration is an accounting of expenses incurred in the litigation which were all necessary to effective representation of Plaintiffs and are  billable expenses.  Villanueva Decl. ¶ 11, Ex. _.  The total litigation costs to date are $12,431.44.  *Id.*  This is substantially less the $20,000.00 amount specified in the parties' Settlement Agreement, and it does not include all potential recoverable costs for travel, printing, postage, scanning and other expenses incurred.[1]  The costs include the two private mediation sessions which prompted the parties to act towards early resolution and to continue meet and confer negotiations.  *Id.*

Thus, the court should grant an award of reasonable litigation costs in the amount of $12,431.44  to Counsel.

**c.**   **The Requested Incentive Awards are Reasonable.**

The $2,000.00 Incentive Award to the four (4) named Plaintiffs and class representatives is fair and not the result of improper self-interest.  Federal courts in California frequently award enhancement payments to lead plaintiffs for their efforts in prosecuting cases.  *See, e.g.*, *Glass v. UBS Financial Services, Inc*., No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476 at *51-52 (N.D. Cal. Jan. 26, 2007) (approving payments of $25,000 to each named plaintiff); *see also In re Heritage Bond Litigation*, Case No.: 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555 at *56-58 (C.D. Cal. July 10, 2005) (awarding incentive payments of between $5,000 and $18,000); *Van Vranken v. Atlantic Richfield Co*., 901 F. Supp. 294, 300 (N.D. Cal. 1995) (awarding $50,000 to a lead plaintiff).  Courts have thus recognized that the important goals of the class action vehicle

---

[1] Counsel will submit updated expense reports concerning Plaintiffs' Motion for Final Approval of Class Settlement.

will best be served if individuals are given reasonable incentives to step forward and represent their co-workers.

In this context, a payment to the named Plaintiffs of $2,000 each out of a total $2.2 Million settlement is both fair and reasonable.  Plaintiffs assisted Counsel with investigation of the claims by, among other things, participating in multiple telephone conferences to discuss Defendant's policies and practices and their experiences.  Benjamin Decl. ¶ 26.  Each named Plaintiff also supervised other employees and provided insight on potential class members, class discovery, and practices beyond their specific work locations.  *Id.*  Each Plaintiff spent time locating and producing documents relating to their time working for Defendant and participated in an informal interview before counsel for both parties.  *Id.* Plaintiffs also risked being responsible for Defendant's costs if the case was lost and risk to their future employment prospects damaged by the fact that they are a named plaintiff in a class action wage and hour lawsuit against a former employer.  *Id.*

Thus, Plaintiffs should each be awarded an incentive payment of $2,000.00.

### III.   CONCLUSION

Based on the foregoing, the Court should grant: $550,000.00 in attorneys' fees to Counsel; $12,431.44 in litigation costs to Counsel; and $8,000.00 in incentive awards to be distributed to each of the four (4) named Plaintiffs in the amount of $2,000.00.

Dated:  November 4, 2019                    Respectfully submitted,

BENJAMIN LAW GROUP, PC.

By _____
   NA'IL BENJAMIN, ESQ.

Attorney for Plaintiffs
WILLIAM USCHOLD, TIANA NAPLES,
JOSE ALMENDAREZ and
TYRONE DANGERFIELD