BENJAMIN LAW GROUP, P.C.
NA'IL BENJAMIN, ESQ. (SBN 240354)
1290 B STREET, SUITE 314
HAYWARD, CA 94541
Telephone: (510) 897-9967
Facsimile:  (510) 439-2632
nbenjamin@benjaminlawgroup.com

Attorneys for Plaintiffs
WILLIAM USCHOLD, TYRONE DANGERFIELD,
TIANA NAPLES, and JOSE ALMENDAREZ
On behalf of themselves and others similarly situated

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM USCHOLD and TYRONE DANGERFIELD, each individually and on behalf of others similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br><br>NORTHSTAR MEMORIAL GROUP, et al.,<br><br>               Defendants. | Case No. 3:18-cv-01039-JSC<br><br>**NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**[Declarations of Na'il Benjamin and Allyssa Villanueva; filed concurrently herewith]**<br><br>**Date:** February 20, 2020<br>**Time:** 9:00am<br>**Place:** Courtroom F, 15th Floor, 450 Golden Gate Ave., San Francisco<br>**Judge:** Hon. Jacqueline Scott Corley |

PLEASE TAKE NOTICE that, on Thursday, February 20, 2020 at 9:00 a.m., or as soon

thereafter as may be heard, in Courtroom F of the San Francisco Courthouse of the U.S. District

Court for the Northern District of California, located at 450 Golden Gate Avenue, 15th Floor, San

Francisco, California 94102, Plaintiffs WILLIAM USCHOLD, TYRONE DANGERFIELD,

TIANA NAPLES, and JOSE ALMENDAREZ (collectively "Plaintiffs") and Defendants

NORTHSTAR MEMORIAL GROUP; NORTHSTAR MEMORIAL GROUP D/B/A CHAPEL

1   OF THE CHIMES; CHAPEL OF THE CHINES AND NSMG SHARED SERVICES LLC,

2   D/B/A/ NORTHSTAR MEMORIAL GROUP SHARED SERVICES LLC (collectively

3   "Defendants") (all together, "the Parties") jointly will and hereby do move this Court for an order

4   finally approving the Settlement Agreement submitted concurrently herewith.  This Motion is

5   made on the grounds that:

6       a.   This Court preliminarily found the settlement to be fair, reasonable and adequate when

7            it granted preliminary approval ;

8       b.   The Settlement Administrator's requested expenses are fair and reasonable;

9       c.   This Court should continue to find the settlement to be fair, reasonable and adequate

10           and grant final approval.

11      This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities

12   included below, the Declaration of Na'il Benjamin, Esq. and Allyssa Villanueva, Esq., filed

13   concurrently herewith, and all accompanying exhibits, all papers currently on file with this Court,

14   and such further evidence and arguments as may be presented at hearing.

15

16   Dated:  January 16, 2020                    Respectfully submitted,

17

18                                               BENJAMIN LAW GROUP, PC.

19

20                                               By  _____/s/ Na'il Benjamin_____
                                                     NA'IL BENJAMIN, ESQ.
21                                                   Attorney for Plaintiffs

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

III. EVENTS AFTER PRELIMINARY APPROVAL . . . . . . . . . . . . . . . . . . . . . . . . . .4

   A. Class Notice and Notice Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

   B. Class Response to Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

IV. CLASS RECOVERY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

   A. Class Members Are Set To Receive a Favorable Settlement Sum . . . . . . . . . . . . . . . 5

   B. Settlement Payment to the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

   C. Release . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

V. DISCUSSIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

   A. The Final Approval Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

   B. This Court Should Preliminarily Approve the Settlement Agreement . . . . . . . . . . . 10

      i. The Settlement is the Result of Serious, Informed, Non-collusive Negotiations. . .11

      ii. The Settlement is Fair Considering the Potential Damages Per Class Member,

      And The Value And Risks Relating To Further Litigation. . . . . . . . . . . . . . . . . . . . .11

      iii. Sufficient Discovery and Investigation Has Occurred to Assess the

      Fairness of the Settlement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      iv. The Settlement Amount and Method of Allocation are Fair. . . . . . . . . . . . . . . . 15

      v. Plaintiffs' Enhancement Award Is Appropriate. . . . . . . . . . . . . . . . . . . . . . . . . . .16

VI. THE SETTLEMENT ADMINISTRATOR'S REQUESTED EXPENSES

   ARE REASONABLE AND APPROPRIATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

VII. THIS COURT SHOULD FIND THE SETTLEMENT TO BE FAIR

   REASONABLE AND ADEQUATE AND GRANT FINAL APPROVAL . . . . . . . 18

VIII. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**TABLE OF AUTHORITIES**

**CASES**

**Federal Cases**

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (C.D. Cal. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Glass v. UBS Financial Services, Inc.*, WL 221862 (N.D. Cal. 2007). . . . . . . . . . . . . . . . . . . 16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . .11, 14

*In re Global Crossing Securities and ERISA Litigation* 225 F.R.D. 436 (S.D.N.Y. 2004). . . . 16

*In re Heritage Bond Litigation*, WL 1594403 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re IKON Office Solutions* 194 F.R.D. 166 (E.D. Pa. 2000)  . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Omnivision Tech., Inc.*, 2008 WL 123936 (N.D. Cal. Jan. 9, 2008) . . . . . . . . . . . . . . 15, 16

*National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004). . . . . . . . . . 15

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) . . . . . . . . . . . . . . .15

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) . . . . . . . . . . . . . . .16

*Young v. Polo Retail, LLC*, 2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) . . . . . . . . . . . . . . . .10

**State Cases**

*Dunk v. Ford Motor Co.*, 48 Cal. App. 4th 1794 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

**OTHER AUTHORITIES**

*Manual for Complex Litigation*, § 30.44 (2nd ed. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Alba Conte & Herbert B. Newberg, 2 Newberg on*

    *Class Actions*, § 11.41(4th ed. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs and Defendants seek final approval of a $2.2 Million, non-reversionary settlement made with Defendants covering a class period between January 17, 2014 through October 8, 2019. The preliminarily approved settlement resolves claims in a First Amended Complaint based on: (1) Unlawful Collection of Wages Earned, Cal. Lab. Code § 221; (2) Unauthorized Deduction, Cal. Lab. Code § 224; (3) Failure to Reimburse for Necessary and Reasonable Business Expenditures, Cal. Lab. Code § 2802; (4) Failure to Pay Wages, Cal. Lab. Code §§ 510, 1174; (5) Breach of Contract; (6) Fraud – Intentional Misrepresentation; (7) Fraud – False Promise; (8) Failure to Pay Minimum Wages, Cal. Lab. Code §§ 1194, 1197; (9) Failure to Provide Meal Periods, Cal. Lab. Code §§ 226.7, 512, 1198; (10) Failure to Provide Rest Periods, Cal. Lab. Code §§ 226.7, 1198 and applicable Wage Orders; (11) Failure to Provide Accurate Wage Statements, Cal. Lab. Code §§ 226, 226.3; (12) Failure to Timely Pay Wages, Cal. Lab. Code § 204; (13) Failure to Timely Pay All Final Wages, Cal. Lab. Code § 201-203; (14) violation of the UCL, Cal. Business &Professions Code § 17200; and (15) violation of the Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698 et seq. (Id. at ¶ 19; see also Dkt. No. 48-2, Ex. B at 54-55.) all of which Defendants deny.

Following the Court's Order on October 8, 2019, preliminarily approving the class settlement, Simpluris, the authorized settlement claims administrator, mailed notice to 449 class members containing the details of the notice authorized by this Court and described in more detail below. Plaintiffs' counsel, Benjamin Law Group, P.C., also published the court's notice, court filings, motion for attorney's fees, and upcoming hearing dates on a website it owns and maintains: www.NorthStarSettlement.com. To date, no class members have opted out or objected to the settlement.

## II. BACKGROUND

This action was originally filed in Alameda County Superior Court on January 17, 2018, alleging five state law claims against five business entities as follows: (1) unlawful collection of wages ; (2) unauthorized deduction of wages; (3) failure to reimburse business expenses; and (4)

failure to pay wages; in addition to a fifth claim for violation of the unfair competition law codified in the California Business and Professions Code.  Declaration of Allyssa Villanueva ("Villanueva Declaration") ¶ 2.

On February 16, 2018, Defendant NSMG SHARED SERVICES, LLC ("NSMG") removed the action to this Court under the Class Action Fairness Act ("CAFA") asserting that it is the only properly named Defendant.  Notice of Removal [Dkt No. 1]  Plaintiffs filed a Motion to Remand but withdrew that motion after evaluating the bases for removal. [Dkt Nos. 10 and 18].  The Parties participated in two mediations with Tripper Ortman, a retired trial lawyer and partner from the international law firm, Seyfarth Shaw.  Villanueva Decl. ¶ 3.  The Parties also conducted discovery in advance of both mediations. Id. The first mediation was on October 24, 2018.  Id.  The first day of mediation was unsuccessful.  Id.  However, the Parties conducted additional discovery, including hours of informal interviews of the named Plaintiffs, a key defense witness with direct knowledge of the facts relating to Plaintiffs' allegations, as well as non-party witnesses.  Villanueva Decl. ¶ 4.  The parties then spent many months in discussions and negotiations regarding the proposed new plaintiffs, new claims of fraud and failure to pay overtime wages, and the terms of a second mediation.  Id. at ¶ 5.  The Parties engaged in extensive informal individual and class discovery for the exclusive purpose of participating in a second mediation with the new claims included.  Id. at ¶ 6.

The Parties then scheduled a second day of mediation and attempted to settle the case on February 5, 2019.  Villanueva Decl. ¶ 11.  The Parties continued to engage in discovery including document exchange and witness interviews to assess their positions for mediation.  Id. at ¶¶ 7-10. 9.  The documents exchanged in discovery revealed an increased number of 429 putative class members with around 50% classified as outside sales and 50% classified as inside sales and around 81 were classified as both outside and inside sales during their employment in the class period with Defendant.  Id. at ¶ 9.  The February 2019 mediation was also unsuccessful and focused mainly on the outside sales exemption issue.  Villanueva Decl. ¶¶ 12 and 14.  Based on the record and assessment, Plaintiff valued the case to be at least $9 Million and Defendant contended there was no exposure.  Id. at ¶ 13.  Defendant presented strong defenses to

2

class certification and liability. Plaintiffs learned during informal discovery that the disputed commission structure was not in existence until 2017, and that the company had written commission agreements, sales policies and weekly commission statements. Id. at 13(b). Plaintiffs also learned that Defendant had conducted training on its commission structure within the first six months of its rollout. Id. The disputed exposure period was greatly reduced. For those who were classified a exempt Outside Salespersons, Defendant maintained that they were all properly classified, and proving otherwise was expected to be an uphill battle. Id. at 13(b). Defendant also presented evidence of policies prohibiting off the clock work. In addition, Defendant was able to demonstrate it provided expense reimbursement for travel time and cell phone use for some potential class members, which would have made class certification a significant challenge. Id. at 13(b).

The Parties continued to negotiate after the last Case Management Conference, and ultimately reached an agreement in early March 2019. Villanueva Decl. ¶ 7. At all times, the Parties' remained adverse, their negotiations were non-collusive, and at arm's length. Villanueva Decl. ¶ 17.

Plaintiffs filed a Notice of Settlement on March 8, 2019. [Dkt No. 36] On May 31, 2019, Plaintiffs filed a Motion to the Court for the Preliminary Approval of the Settlement Agreement. Villanueva Decl. ¶ 19, Ex. A. On October 29, 2019, the Parties stipulated to Plaintiffs filing a their First Amended Complaint which added Plaintiffs Tiana Naples and Jose Almendarez, and adds new factual allegations and additional claims that will be settled and released through the Settlement Agreement. (Id. at ¶¶ 19, 33.) The claims in the FAC are: (1) Unlawful Collection of Wages Earned, Cal. Lab. Code § 221; (2) Unauthorized Deduction, Cal. Lab. Code § 224; (3) Failure to Reimburse for Necessary and Reasonable Business Expenditures, Cal. Lab. Code § 2802; (4) Failure to Pay Wages, Cal. Lab. Code §§ 510, 1174; (5) Breach of Contract; (6) Fraud – Intentional Misrepresentation; (7) Fraud – False Promise; (8) Failure to Pay Minimum Wages, Cal. Lab. Code §§ 1194, 1197; (9) Failure to Provide Meal Periods, Cal. Lab. Code §§ 226.7, 512, 1198; (10) Failure to Provide Rest Periods, Cal. Lab. Code §§ 226.7, 1198 and applicable Wage Orders; (11) Failure to Provide Accurate Wage Statements, Cal. Lab. Code §§ 226, 226.3;

(12) Failure to Timely Pay Wages, Cal. Lab. Code § 204; (13) Failure to Timely Pay All Final Wages, Cal. Lab. Code § 201-203; (14) violation of the UCL, Cal. Business &Professions Code § 17200; and (15) violation of the Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698 et seq. (Id. at ¶ 19; see also Dkt. No. 48-2, Ex. B at 54-55.)

## III. EVENTS AFTER PRELIMINARY APPROVAL

### A. Class Notice and Notice Plan

Class Counsel retained a neutral third-party administrator, Simpluris, to administer the class notice and manage the claims process. (Benjamin Declaration, ¶ 2) Upon receiving the Court's Order and description of the requisite characteristics and content of the notice for the class, Mr. Benjamin instructed his office to amend the Notice to track the Court's Order; including the language the Court provided regarding Plaintiffs' motion for attorney's fees. (Benjamin Declaration, ¶ 3), Exh. A). Ms. Villanueva emailed an amended Notice to Simpluris the same day. (*Id*. at ¶ 4; See Exh. B)

Simpluris prepared a draft of the formatted notice packet which counsel subsequently reviewed and approved for mailing. (Benjamin Declaration, ¶ 5) Simpluris also received the class data file from defense counsel, which contained the name, social security number, last known mailing address, and other information sufficient to ensure adequate efforts were made to notify each known class member. *Id*. at ¶ 6.

On November15, 2019, Simpluris mailed notice to each class member via U.S. First Class Mail. Simpluris has provided a weekly accounting confirming that none of the class members have opted out, or objected to the class settlement, as of January 10, 2020. *Id*. at ¶ 7. On January 15, 2020, Simpluris provided counsel with final confirmation that none of the class members had opted out or objected to the class settlement. *Id*. at ¶ 8.

This Court determined that Plaintiffs' Class Notice Plan satisfied FRCP 23(b)(3) and FRCP 23(c)(2)(B), except that the Notice needed to include the following language:

> Class counsel will apply in writing to the Court on or before November 4, 2019 for their requested attorneys' fees and costs. Their application will be available on the Settlement website: www.NorthstarSettlement.com within one day of its filing or upon request to Class Counsel. You may object to the attorneys' fees and costs

sought no later than [60 days after Notice is mailed] in accordance with Section 22 of this Notice

Despite Plaintiffs' counsel's intent to comply with this instruction, Mr. Benjamin discovered on January 15, 2020 that the Court's Order had not been strictly followed. (Benjamin Declaration, ¶ 9-10). In an effort to remedy this, Mr. Benjamin instructed Simpluris to mail an additional notice ("Attorney's Fees Notice") to the class explaining that Plaintiffs' motion for attorney's fees was filed on November 4, 2019 seeking fees in the amount of $550,000 which is less than the maximum agreed-upon amount, and that the Court will consider Plaintiffs' motion at a hearing scheduled for February 20, 2020, at 9 a.m. *Id.* at ¶ 11. The Notice will also attach Plaintiffs' motion and supporting declaration, and further inform the Class that if they object to the award of attorney's fees in any way, they should follow the process set forth in Section 22 of the Notice; including notifying the Court as soon as possible, and appearing at the hearing. *Id.* at ¶ 12. A true and correct copy of the Attorney's Fees Notice is attached hereto as Exhibit C. *Id.*

**B. Class Response to Notice**

Class members did not need to opt-in or otherwise affirmatively express the intent to receive compensation. If a class member intended to pursue individual claims, or otherwise object to the settlement, January 14, 2020 was the deadline to do so. Simpluris reports that none of the class members have opted-out or objected to the settlement terms.

**IV. CLASS RECOVERY**

**A. Class Members Are Set to Receive a Favorable Settlement Sum**

Although the Gross Settlement Sum is two million and two hundred thousand dollars, Plaintiffs' counsel submitted a motion for attorney's fees for only 25% of the Gross Settlement Sum leaving a larger portion of the Gross Settlement Sum to be shared by the class. Benjamin Declaration, ¶ 13. As of the time of filing the Amended Motion for Preliminary Approval of Class Settlement, the anticipated distributions was as follows:

Gross Settlement Fund:                    $2,200,000.00

| | | |
|---|---|---|
| Less Attorneys' Fees | -$ | 736,200.00 |
| Less Litigation Costs | -$ | 20,000.00 |
| Less Settlement Administration | -$ | 7,500.00 |
| Less Plaintiff Service Awards | -$ | 8,000.00 |
| Less PAGA Penalties | -$ | 33,000.00 |
| Less Maximum Employer Payroll Taxes | -$ | 87,001.83 |
| **NET SETTLEMENT FUND** | | **$1,308,298.17** |

Benjamin Declaration, ¶ 13. Based on these numbers, and as of the date of this filing, the highest Settlement Share to be paid is approximately $9,236.48 and the average Settlement Share to be paid is approximately $2,913.80. *Id*. at ¶ 14.

If the Court grants Plaintiffs' counsel's pending motion for attorney's fees, there will be an additional $186,200 to be shared by the class. *Id*. at ¶ 15. Additionally, Plaintiffs' counsel sought reimbursement for costs in the amount of only $12,431.44, leaving an additional $7,568.56 to be shared amongst class members. *Id*.

**B. Settlement Payments to the Class**

Each class member that does not opt out will receive a Class Settlement Payment based on number of weeks the class member worked compared to the number of weeks worked by all class members as follows:

(a) Each Class Member's "Total Individual Workweeks" will be determined on a pro-rata basis as determined by the number of workweeks each Class Member worked in the state of California from January 17, 2014 through the date of preliminary approval of the settlement.

(b) The Total Individual Workweeks for each Class Member will be aggregated to determine the "Total Class Gross Workweeks."

(c) The estimated Individual Settlement Payment for each Class Member set forth in the Class Notice will be based on: (a) each Class Member's Total Individual Workweeks; (b) divided by the aggregate number of Total Class Gross Workweeks of all Class Members; (c) multiplied by the value of the Net Settlement Amount

No later than ten (10) calendar days of the Effective Date, the Settlement Administrator shall mail all Class Settlement Payments. The face of each check sent to Class Members shall clearly state that the check must be cashed or deposited within one hundred eighty (180) calendar days. All Class Settlement Payments distributed by the Settlement Administrator will be

1    accompanied by a cover letter stating words in bold to the effect that "the check must be cashed

2    or deposited within one hundred eighty (180) days or it will become void." Agreement ¶ 44.

3         If a check is returned undeliverable to the Settlement Administrator, the Settlement

4    Administrator will make all reasonable efforts to locate the Class Member's correct address.  If a

5    Class Member's NSA Payment check is not cashed or deposited within one hundred twenty (120)

6    calendar days following the date of mailing of said check following mailing of said check, the

7    Settlement Administrator will send the Class Member a letter or a postcard informing him or her

8    that unless the check is cashed or deposited within the remaining two months, it will expire and

9    become non-negotiable, and offer to replace the check if it was lost or misplaced but not cashed.

10   Agreement ¶ 45.

11        Defendants' estimated share of applicable payroll taxes to be paid on the individual

12   settlement payments, including but not limited to FICA and FUTA will be deducted from the

13   GSA.  During the negotiations of the settlement in this matter, the Parties discussed the tax

14   treatment of any settlement and the costs associated with same.  Declaration of JoAnna L. Brooks

15   In Support of Amended Motion for Preliminary approval of Settlement ("Brooks Decl.") ¶ 2.

16   When determining the GSA, Defendant estimated the cost of handling the preparation of the

17   settlement checks, and particularly the payment of the employer's share of payroll taxes that

18   would be owed on the portion of the settlement allocated to the payment of wages.  Id.  As the

19   parties worked towards a final gross settlement amount, Defendant estimated the costs for the

20   payment of the employer's share of payroll taxes could be as high as $100,000, depending on the

21   net settlement for distribution to the participating class members.  Id.  The Parties agreed the GSA

22   would cover the employer's share of taxes and would constitute the maximum sum paid by

23   Defendant.  Id.  Similar to other deductions from the gross settlement amount to cover attorneys'

24   fees/cost, claims administration, service awards, and PAGA payments, Defendant agreed to

25   contribute more to the gross settlement amount with the expectation that the employer taxes

26   would be deducted from the fund.  Brooks Decl. ¶ 3.

27        Based on the breakdown of the settlement, the net settlement fund that the parties intend

28   to distribute to the participating class members is approximately $1.4 Million.  Brooks Decl. ¶ 4.

Of the $1.4 Million, a third will be allocated to wages, $466,667, and subject to the payment of payroll taxes. Based on current tax rates applicable to Defendant's operations in California, the employer's share of federal and state taxes owed on this amount will be approximately $64,633.38, which is less than the $100,000 that Defendant estimated and contributed to the settlement fund to cover the employer's share of payroll taxes. Id.

Although Plaintiffs identified *cy pres* recipients for unclaimed settlement funds, Plaintiffs now contend that the State of California is the most appropriate recipient for unclaimed property. Neither the named Plaintiffs or Plaintiffs' counsel have any known relationships with any of the *cy pres* recipients named in the motion for preliminary approval. Plaintiffs' counsel cannot present a strong argument in support of distributing unclaimed settlement funds to any entity other the State of California.

**C. Release**

The Notice of Class Settlement informed class members of the nature of the claims being settled, and the nature and scope of a release that will be binding on them. The Notice provided that upon final approval of the Settlement by the Court, Settlement Class members who do not request exclusion shall release NSMG, and each and all of its respective past and present parents, subsidiaries, affiliated companies and corporations, and each and all of their respective past and present owners, directors, officers, managers, employees, general partners, limited partners, principals, agents, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, joint venturers, assigns, or related entities, and each and all of their respective executors, successors, assigns and legal representatives (collectively, the "Released Parties"), from all claims, charges, complaints, liens, demands, causes of action, obligations, damages and liabilities, whether known or unknown, that each Class Member had, now has, or may hereafter claim to have against the Released Parties, arising at any time during the Class Period that were or could have been pleaded based on the facts and allegations alleged in the First Amended Complaint filed in the Lawsuit or arising out of the same nucleus of operative facts. Agreement ¶¶ 96-103.

"Released Claims" means all claims, charges, complaints, liens, demands, causes of action, obligations, damages and liabilities arising at any point during the Settlement Period that were asserted in this lawsuit, or that are based on any of the facts, circumstances, transactions, events, occurrences, acts, disclosures, statements, omissions or failures to act alleged in the Lawsuit, regardless of whether such claims arise under federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law. (In this context, "Operative Complaint" refers to the complaint which is in effect at the time of distribution of Class Notice [see Section XIII(A) below].) The Released Claims specifically include claims that employees who were paid commissions by Defendant NSMG Shared Services, LLC between January 17, 2014 through the date of Preliminary Approval of Settlement were: (i) fraudulently misled regarding the terms of the NSMG commission structure at the time of hiring or at the time of implementation of the commission plan, (ii) misclassified as exempt employees; (iii) were not paid the minimum wage and overtime wages owed for all hours worked, including but not limited to, off the clock work for work performed during on-call status, travel to meet with customers and/or attend events, work performed outside of scheduled work hours, and time spent taking rest periods; (iv) were subject to unlawful payroll deductions or otherwise not paid for all earned commissions; (v) were not reimbursed for reasonable and necessary business expenses, including but not limited to travel expenses and personal cell phone expenses; (vi) were not provided meal and rest breaks in compliance with California law and applicable Wage Order(s); (vii) were not provided accurate, itemized wage statements, (viii) were not timely paid owed wages during employment; and (ix) were not timely paid for all owed wages upon the termination of employment. The "Released claims" also include incorporated or related claims asserted through California Business and Professions Code § 17200; any penalties under the PAGA, and any and all penalties, interest and attorneys' fees and costs based on the alleged claims set forth in the Complaint. The Released Claims include, but are not limited to, alleged violations of the following statutes and wage orders: Cal. Lab. Code §§ 201, 202, 203, 204, 218.5, 221, 223, 224, 226, 226.2, 226.7, 226.8, 510, 512, 1174, 1197, 1198, 2698-2699.5, and 2802; Cal. Bus. & Prof.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Code § 17200, et seq.; IWC Wage Order 2; IWC Wage Order 4-2001; and IWC Wage Order 5-2001.

"Released Parties" means Defendant and its affiliates, parent company, and subsidiaries, and each of their respective affiliates, parent companies, subsidiaries, related entities, officers, directors, members, partners, owners, shareholders, employees, former employees, agents, servants, attorneys, assigns, independent contractors, volunteers, predecessors, successors, and organizations, insurers, and any and all other persons, firms and corporations in which Defendant or its affiliates may have an interest.

*Claims unrelated to the Released Claims during the Settlement Period are not released.*

## V. DISCUSSION

### A. The Final Approval Process

Court approval of class action settlements is a two-step process: preliminary approval and final approval. Manual for Complex Litigation, (Fourth) ("MCL 4th") § 21.632 (2004). The Court already completed the first step by preliminarily approving the settlement after determining the settlement terms were fair, reasonable, and adequate. As required in the preliminary approval analysis, this Court preliminarily determined that the settlement did not result from fraud, overreaching, or collusion, but instead from serious, informed, non-collusive negotiations. The Court further determined that the settlement had no obvious deficiencies, did not grant preferential treatment to the class representative or segments of the class, and fell within the range of possible approval. See *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006) (citing Manual for Complex Litigation, §30.44 (2nd ed. 1985)). And the Court determined Class Counsel was experienced and conducted sufficient investigation and discovery to act intelligently. See Alba Conte & Herbert B. Newberg, 2 Newberg on Class Actions, § 11.41(4th ed. 2002). These factors remain satisfied.

### B. This Court Should Approve the Settlement Agreement

As explained more fully below, the proposed Settlement Agreement was reached through arms' length negotiation and bargaining, it involved mediation before a respected and experienced mediator, the investigation and discovery in the case were sufficient to allow counsel and the

Court to act intelligently, and Plaintiffs' Counsel is experienced in similar litigation as well as in other complex matters. The Proposed Settlement is also fair, reasonable and adequate given the inherent risks of litigation, the risks regarding class certification, and the expense and time consumed by litigation.

i.     The Settlement is the Result of Serious, Informed, Non-collusive Negotiations.

The Proposed Settlement presented to the Court for final approval is the result of almost one and a half years of litigation, discovery and negotiations between Plaintiffs' and Defendant's counsel, which culminated in two days of private mediation. Although both mediations failed, the Parties were able to reach a settlement after ongoing extensive negotiations.

The Parties vigorously debated the proper application of the law and the uncertainties posed by unsettled questions at issue in this litigation as described above. Each side has strongly advocated its positions concerning the claims and defenses at issue. Each side also recognizes that the expense, delay, and uncertainty of the result after trial and appeal present the danger that an ultimate victory by either side may be of less value than the Proposed Settlement. Counsel for Plaintiffs and Defendant submit that the Proposed Settlement is in the best interests of all parties.

ii.     The Settlement is Fair Considering the Potential Damages Per Class Member, and the Value and Risks Relating to Further Litigation.

When considering the fairness of settlement, courts consider the strength of a plaintiffs' case as well as the risk, expense, complexity and likely duration of further litigation. See Hanlon v. Chrysler Corp., 150 F.3d at 1026. The Parties acknowledge that the facts of this case are disputed. Plaintiff contends that NSMG is liable for failure to pay wages by unlawful and unauthorized deductions and collections through its commission agreements; liable for breach of contract; liable for unpaid wages due to misclassification, liable for off the clock work, liable for meal and rest violations; liable for fraud based on its false promises and misrepresentations in entering into commission agreements; and liable for failure to reimburse business expenses. NSMG denies all liability for such claims, maintains that its commissioned employees are properly compensated for all wages in conjunction with its payment policies, maintains that it did not make misrepresentations or false promises in entering into the commission agreements on

11

individualized basis with each employee, maintains it properly classified its Outside Sales Persons as exempt, maintains it paid its employees for all hours worked, maintains it provides lawful meal and rest breaks, and maintains that it reimbursed all business expenses, and maintains that these claims are not certifiable due to the individualized facts and questions relating to each individual employee.

There was a significant range of exposure in this case on each of the various claims asserted. Villanueva Decl. ¶ 13. On each of the claims, Defendant presented strong defenses to class certification and on the merits. Plaintiffs estimated meal period exposure between $1 Million to $5 Million based on respective averages of one (1) missed meal and one (1) rest period per class member per week and five (5) missed meal periods and five (5) missed rest periods per class member per week during the class period calculated on a daily wage based on the average hourly rate of $11.00/hour. However, Defendant argued that it had a compliant meal period policy and produced time detail records in support of its arguments. This claim therefore was limited mainly to the Outside Salespeople who were classified as exempt, and which Defendant maintained were properly classified, thereby creating a greater challenge on class certification. Even if misclassified (which Defendant did not concede), Defendant maintained that very few Outside Sales Persons worked daily shifts in excess of five hours to trigger a meal period. Defendant contends that proof to the contrary would have been extremely difficult since most Outside Sales Persons did not keep accurate records of daily hours worked. Similarly, Plaintiffs estimated rest period exposure between $1 Million to $5 Million based on respective averages of one (1) missed meal and one (1) rest period per class member per week and five (5) missed meal periods and five (5) missed rest periods per class member per week during the class period calculated on a daily wage based on the average hourly rate of $11.00/hour. Defendant presented the same defenses.

Plaintiffs estimated $1 Million in exposure for unpaid wages for alleged misclassification. This was calculated based on assumption of 350 class members who were paid at a daily rate of $92.00 instead of the average hourly rate of $11.50, plus overtime. This claim also includes statutory waiting time penalties of up to 30 days which is estimated at $2,670.00 per class

member.  Defendant presented evidence and arguments that Outside Salespeople work more than 50% of their work time out in the field as a means to meet the exemption.  Proving otherwise may have required individualized inquiries and would not have been subject to common proof.  There was a substantial risk that this claim would not have been certified under the circumstances, and therefore any potential recovery had to be reduced according to the risk of loss.  Plaintiffs estimated the exposure for off the clock work to be around $750,000.00.  The estimate is based on around $345.00 in unpaid overtime and doubletime per week per Family Service employee who worked "on call".  Plaintiffs estimated an additional $2 Million in exposure for hourly sales person based on assumption of only six (6) months' employment.  Defendant was able to show it had policies prohibiting off the clock work and procedures for reporting all working time.  There were employees who were reporting their on call time and getting paid.  Again, this made common proof difficult and potential class recovery more challenging.  Plaintiffs estimated that liability for unreimbursed personal vehicle use was approximately $2 Million based on an average of 750 miles per month for six (6) months per class member.  Plaintiff believes that 750 miles per month is a low average given that many class members worked in excess of 6 months an even in excess of one year.  However, Plaintiffs learned that Defendant provided stipends to some employees who were required to use their personal vehicle for company business, and maintained a policy allowing for reimbursement of mileage.  Plaintiffs' cell phone reimbursement claim faced similar obstacles.  Plaintiffs learned that Defendant provided stipends for cell phones for some employees and land lines accessible to others to perform their job duties.  Any exposure was greatly reduced as a result of these policies.  Plaintiffs estimated the total exposure to be at least $3 Million based on an average of $4,000.00 in unpaid commission per month for three (3) months of employment for at least 300 class members.  Defendants disclosed during the informal discovery process that the actual amount in controversy was under $1 Million.  The commission structure at issue was not rolled out until the Spring of 2017, which greatly reduced the exposure period.  In addition, Defendant provided evidence of written commission agreements, sales policies and weekly commission statements.  Defendant also presented evidence of training on the commission structure.  Defendant maintained that there was no fraud based on the

transparency of the commission structure. Defendant argued that the dispute was limited to a brief period of time as the commission structure was being rolled out and employees were still learning about the structure. Defendant's defenses presented a significant obstacle to class certification and success on the merits, which resulted in a significant discount to our initial exposure estimate.

In the face of Defendants' competing arguments and the potential uncertainties, Plaintiffs' Counsel believes that the agreed-upon settlement fairly compensates the Class Members for wages and penalties allegedly owed. As this Court is undoubtedly aware, the uncertainty of the outcome of a class certification motion and ultimate adjudication of the facts (if there is one) here places both parties in a position of significant risk. The parties are also informed by an awareness of the extreme expenditures in time and money required to litigate to conclusion class-wide issues regarding the application of California's wage and hour laws. If this case were certified, it would then need to proceed to trial. In a case of this size, post-trial and appellate proceedings would be likely to occur, which would surely drag the case even further into the future. When facing a distant and unsure resolution of the allegations in this action, a swift, sure and substantial settlement is all the more reasonable. The Parties assessed and valued their respective risks and liabilities during and aside from mediation negotiations to reach the proposed settlement. See Villanueva Decl. ¶¶ 3-17.

        iii.     Sufficient Discovery and Investigation Has Occurred to Assess the Fairness of the Settlement.

Another factor considered for purposes of approving a settlement is the extent of discovery completed. See Hanlon, 150 F.3d at 1026. The Parties have conducted thorough discovery and investigation into Plaintiffs allegations and NSMG's defenses. See Villanueva Decl. ¶¶ 3-17. Over the course of the litigation, the Parties obtained sufficient information to assist with analyzing their respective positions. See Agreement ¶¶ 22-23. Accordingly, sufficient investigation and discovery has been conducted for the Parties to be well-informed of the nature and the extent of the Class claims, and to enable both sides to fully evaluate the settlement proposal for adequacy, fairness and reasonableness.

1    Defendant produced hundreds of pages of documents in response to Plaintiffs' document

2    requests, and as evidence supporting Defendant's defenses.  The Parties interviewed key

3    witnesses, debated the data relating to the number of potential class members, the total number of

4    class wide work weeks based on the number of potential class members, complex calculations

5    regarding sales commissions and sales quotas under Defendant's PIPP/Gate system, analyzed hire

6    dates and commission agreements, and analyzed Defendant's sales practices and how those

7    practices impacted work hours and overtime claims.  These issues were debated and analyzed

8    extensively with respect to different locations throughout the Bay Area, including the extent to

9    which the evidence overlapped or could be distinguished.

10        iv.    The Settlement Amount and Method of Allocation are Fair.

11        Another factor is the amount offered in settlement. See Hanlon, l 50 F .3d at 1026. Based

12   on Plaintiffs' analysis of the data and witness testimony, the claims in this case created an

13   exposure ranging between $9M and $15M before costs and attorneys' fees following class

14   certification and trial.  Villanueva Decl. ¶ 10.  The gross settlement amount is approximately 13%

15   to 22% of that exposure, which is more than reasonable given the risks involved in this case.

16        As courts have observed, "simply because a settlement may amount to only a fraction of

17   the potential recovery does not in itself render it unfair or inadequate. Compromise is the very

18   nature of settlement." Boyd v. Bechtel Corp., 485 F. Supp. 610, 618 (C.D. Cal. 1979).  In this

19   case, Plaintiffs consider the settlement to be significantly more than a "fraction," particularly

20   considering the various potential complications, dangers and pitfalls that proceeding would entail.

21        Courts recognize that the reasonableness of a settlement is not dependent upon it

22   approaching the potential recovery plaintiffs might receive if successful at trial.  See In re

23   Omnivision Tech., Inc., 2008 WL 123936 (N.D. Cal. Jan. 9, 2008); see also Nat'! Rural

24   Telecomm. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("well settled law

25   that a proposed settlement may be acceptable even though it amounts to only a fraction of the

26   potential recovery"); Officers for Justice v. Civil Serv. Comm, 688 F. 2d 615, 628. (9th Cir. 1982)

27   (it is "the complete package, taken as a whole rather than the individual component parts, that

28   must be examined for overall fairness").

1    Based on the numerous risks in continuing with litigation, which are detailed above,

2    Plaintiffs in the current action chose to obtain for the Class a certain award of significant value

3    when compared to the value of the overall claims. The amount accepted is fair and reasonable.

4    See, e.g., Omnivision 2008 WL 123936 at *5; In re IKON Office Solutions (E.D. Pa. 2000) 194

5    F.R.D. 166, 183-84 (approving settlement totaling $116 million although plaintiffs estimated their

6    claims to be worth more than $1 billion dollars, or about 11.6% of the requested amount for

7    damages); In re Global Crossing Securities and ERISA Litigation (S.D.N.Y. 2004) 225 F.R.D.

8    436, 460 (approving partial settlement of $325 million, far below the "tens of billions" estimated

9    in damages by the plaintiffs).

10    In terms of the method of allocation, each class member who does not affirmatively opt

11    out will receive a pro rata share of the NSA based on (a) each Class Member's Total Individual

12    Workweeks; (b) divided by the aggregate number of Total Class Gross Workweeks of all Class

13    Members; (c) multiplied by the value of the Net Settlement Amount.  Each Class Member's Total

14    Individual Workweeks will be determined by reference to the Company's records, subject to each

15    Class Member's right to submit evidence in support of disputed claims.  Agreement ¶ 42.  None

16    are singled out for special treatment (other than Plaintiffs, who are requesting an enhancement

17    payment for their work on the case and the risks they took in being the named plaintiffs).

18        v.    Plaintiffs' Enhancement Award Is Appropriate.

19    The $2,000 Enhancement Award to the named Plaintiffs is fair and not the result of

20    improper self-interest.  Federal courts in California frequently award enhancement payments to

21    lead plaintiffs for their efforts in prosecuting cases.  See, e.g., Glass v. UBS Financial Services,

22    Inc., 2007 WL 221862, *16 (N.D. Cal. 2007)  (approving payments of $25,000 to each named

23    plaintiff); In re Heritage Bond Litigation, 2005 WL 1594403, *18 (C.D. Cal. 2005) (awarding

24    incentive payments of between $5,000 and $18,000); Van Vranken v. Atlantic Richfield Co., 901

25    F. Supp. 294, 300 (N.D. Cal. 1995) (awarding $50,000 to a lead plaintiff).  Courts have thus

26    recognized that the important goals of the class action vehicle will best be served if individuals

27    are given reasonable incentives to step forward and represent their co-workers.

28

In this context, a payment to the named Plaintiffs of $2,000.00 out of a total $2,200,000.00 settlement is both fair and reasonable. (Benjamin Decl. at ¶ 16). Each named Plaintiff assisted Plaintiffs' counsel with investigation of the claims by, among other things, participating in multiple telephone conferences to discuss NSMG's policies and practices and their experiences as employees, identifying key witnesses and additional potential class members, and producing documents needed to assist counsel with assessing the bases and strength of the claims. *Id.* Plaintiffs also risked being responsible for Defendant's costs if the case was lost and having their future employment prospects damaged by the fact that they are named plaintiffs in a class action lawsuit against a former employer. *Id.*

## VI. THE SETTLEMENT ADMINISTRATOR'S REQUESTED EXPENSES ARE REASONABLE AND APPROPRIATE

Plaintiffs retained and the Court approved Simpluris to provide notification services and claims administration. Simpluris' duties performed to-date and to be performed after Final Approval of the Settlement is granted, include: (a) printing and mailing the Notice of Settlement of Class and Representative Claims and Information Sheet (collectively referred to as "Notice Packet"); (b) printing and mailing reminder postcards; (c) receiving and processing requests for exclusion; (d) resolving class members' disputes over the number of workweeks Tesla has record of them working during the class period, which was pre-printed on their individualized Information Sheet; (e) calculating individual settlement award amounts; (f) processing and mailing settlement award checks; (g) handling tax withholdings as required by the settlement and the law; (h) preparing, issuing and filing tax returns and other applicable tax forms; (i) handling the distribution of any unclaimed funds pursuant to the terms of the settlement; and (j) performing other tasks as the parties mutually agree to and/or the Court orders Simpluris to perform.

Simpluris' total fees and costs for services in connection with the administration of this Settlement, which includes fees and costs incurred to-date, as well as anticipated fees and costs for completion of the settlement administration, are $7,500.00. Simpluris' work in connection with this matter will continue with the calculation of the settlement award payments, issuance and mailing of the settlement award checks, the necessary tax filing and reporting on such payments,

and any other tasks that the Parties mutually agree to and/or the Court orders Simpluris to perform. These expenses are reasonable and appropriate and well within the range for similarly sized settlement classes. Class Counsel requests that the Court find these expenses to be appropriate and award Simpluris its expenses.

**VII. THIS COURT SHOULD FIND THE SETTLEMENT TO BE FAIR, REASONABLE AND ADEQUATE AND GRANT FINAL APPROVAL**

This Court already found the settlement is fair, reasonable and adequate when it preliminarily approved it. This Court must now evaluate whether the class agrees with its findings. The Court must presume that class members agree with the Court if the percentage of objectors is small. *Dunk v. Ford Motor Co*., 48 Cal.App.4th 1794, 1802 (1996). The class received notice. None of the class members objected or opted out of the Class Settlement Agreement. Thus, Plaintiffs respectfully request this Court grant this motion in its entirety.

**VIII.   CONCLUSION**

For the reasons discussed above, the Settlement Agreement is fair, adequate, and reasonable, and in the best interests of the Settlement Class. Plaintiffs requests that the Court issues Final Approval of the Settlement Agreement.

Dated:  January 16, 2020                    Respectfully submitted,


                                            BENJAMIN LAW GROUP, PC.

                                            By _____/s/ Na'il Benjamin_____
                                                  NA'IL BENJAMIN, ESQ.

                                               Attorney for Plaintiffs